Linda RANDOL and Bruce Randol, Jr., Plaintiffs–Appellants,

v.

MID–WEST NATIONAL LIFE INSURANCE COMPANY OF TENNESSEE, Defendant–Appellee.

No. 91–7884.

United States Court of Appeals, Eleventh Circuit.

April 12, 1993.

---

**12.** Judges Fay and Anderson join in Judge Roney's separate comments.

Andrew T. Citrin, David G. Wirtes, Jr., Cunningham, Bounds, Yance, Crowder & Brown, Mobile, AL, for plaintiffs-appellants.

Davis Carr, James W. Lampkin, II, Pierce, Carr & Alford, Mobile, AL, for defendant-appellee.

Shelby J. Hoover, Erwin N. Griswold, Patricia A. Dunn, Washington, DC, for amicus curiae American Council of Life Ins.

Before ANDERSON and DUBINA, Circuit Judges, and CLARK, Senior Circuit Judge.

ANDERSON, Circuit Judge:

The question presented in this appeal is whether a health insurance policy obtained by appellant Bruce Randol with the assistance of his employer qualifies as an "employee welfare benefit plan" under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(1). We hold that it does.

Plaintiffs-appellants Linda and Bruce Randol sued their insurance carrier, Mid–West National Life Insurance Co. of Tennessee ("Mid–West"), in Alabama state court pleading state law claims of fraud, breach of contract, and bad faith over Mid–West's refusal to cover the costs of medical care required by Linda Randol. Mid–West removed the action to federal court, alleging federal subject matter jurisdiction based on diversity of parties and on the federal question of whether the state law claims were preempted by ERISA.[1] Following discovery, the district court ruled that the Randols' insurance plan qualifies as an "employee welfare benefit plan," thus bringing the insurance dispute within the regulatory scope of ERISA. As a result, the court dismissed the Randols' state law claims, finding them preempted by the federal statute. The court also struck the Randols' demand for a jury trial, as their remaining cause of action, an ERISA claim, is triable only to a judge. This appeal followed.

## I. FACTS

The material facts relevant to the ERISA preemption issue are not in dispute. Bruce Randol was employed as a mechanic at Ed's Tire Center ("the Tire Center"), a small business wholly owned and operated by Edward Hurt. Hurt employed a total of three people. Before March 1988, Hurt did not offer his employees any insurance benefits. In March 1988, Linda and Bruce Randol decided to purchase major medical insurance for themselves because they were planning to have a child. Mid–West's agent, Daniel Johnson, had originally approached Hurt about buying group coverage for his employees. Hurt was not interested but agreed to allow Johnson to speak with his workers. Bruce Randol subsequently met with Johnson at the Tire Center during business hours and, following their conversation, Randol and another em-

---

1. Assertion of an ERISA preemption defense suffices to establish federal question subject matter jurisdiction under 28 U.S.C. § 1331, thus permitting a state court defendant to remove to federal court pursuant to 28 U.S.C. § 1441. *Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

ployee decided to purchase medical insurance from Mid–West.

Hurt testified that Johnson informed him that the premium payments would have to come from the Ed's Tire Center bank account. It is not clear from the record whether use of this means of payment was an absolute requirement imposed by Mid–West or whether it was simply requested as a convenience to the insurer and to the participating employees. In any event, Hurt agreed to this payment arrangement. In addition, in order to help the employees purchase the insurance and to provide an incentive for them to do so, Hurt decided to contribute $75 toward the cost of the monthly premium for each employee choosing to participate. Hurt wrote a check for the full amount of the first premium payment for each of the two participating employees and then deducted the cost of the premium, less his $75 contribution, from each of the employees' paychecks. This process was repeated each month, with Hurt deducting the participating employees' share of the premium from their pay and permitting Mid–West to debit the Tire Center account for that amount, supplemented by his $75 contribution. Hurt testified that he did not intend to set up an insurance plan or an employee benefit program. Hurt did not comply with any ERISA reporting requirements.

A representative of Mid–West testified that although the major medical policy was considered a "group policy," the only underwriting criterion was the medical eligibility of the individuals to be insured. Mid–West regarded the Randols as individual applicants for insurance. The insurer never sought or received any application from Ed's Tire Center and Bruce Randol's application mentioned the Tire Center only for the purpose of noting his place of employment. Had the Tire Center failed to make a premium payment, Mid–West would have contacted the Randols rather than the company about the delinquency.

When the policy was canceled, Mid–West sent the refund check directly to the Randols.

## II. DISCUSSION

In enacting ERISA, Congress established a regulatory regime governing "employee benefit plan[s]." 29 U.S.C. § 1003. Subject to certain statutory exceptions, *see* 29 U.S.C. § 1144(b), none of which are implicated in this case, ERISA "supersede[s] any and all State laws insofar as they ... relate to any employee benefit plan." 29 U.S.C. § 1144(a). *See Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Whether the instant insurance dispute falls within ERISA's preemptive scope depends on whether the insurance policy at issue qualifies as an "employee benefit plan" for ERISA purposes. The statute defines the term "employee benefit plan" as including, *inter alia,* any "employee welfare benefit plan," 29 U.S.C. § 1002(3), which the statute in turn defines as

> mean[ing] any plan, fund or program ... established or maintained by an employer or by an employee organization ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... medical, surgical or hospital care or benefits, [or various other enumerated categories of benefits].

29 U.S.C. § 1002(1). This statutory definition of an ERISA employee welfare benefit plan has been fleshed out through a combination of agency regulations and case law. The Department of Labor, which under 29 U.S.C. § 1135 is empowered to promulgate rules interpreting ERISA, has issued "safe harbor" regulations. These regulations provide that group insurance offered to workers through their place of employment will *not* be deemed an ERISA plan if the insurance program satisfies certain enumerated criteria.[2] However, the insurance

---

2. The safe harbor regulations provide as follows:

    *Certain group or group-type insurance programs.*

For purposes of Title I of the Act in this Chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program of-

program at issue in this case plainly does not fall within this exception as it does not satisfy the regulations' requirement that the employer not subsidize the purchase price of the insurance. *See* 29 C.F.R. § 2510.3-1(j)(1) (1992).

■ The Labor Department's safe harbor regulations clarify that group insurance programs meeting certain requirements definitely do not qualify as ERISA plans. The courts have also placed their own construction on the 29 U.S.C. § 1002(1) statutory definition of an ERISA employee welfare benefit plan, establishing criteria for determining whether a given program qualifies as an ERISA plan.[3] Interpreting § 1002(1), the Eleventh Circuit has stated that

> To be an *employee* welfare benefit plan, the intended benefits must be health, accident, death or disability, unemployment or vacation benefits; the intended beneficiaries must include union members, employees, former employees or their beneficiaries; and an employer or employee organization, or both, and not individual employees or entrepreneurial businesses, must establish or maintain the plan, fund or program.

*Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir.1982) (en banc) (emphasis in original). There is no question that the insurance policy at issue in this case provides health benefits and that the policy's beneficiaries include employees. Elaborating on the meaning of the term "plan, fund, or program" as used in the § 1002(1) statutory definition, the *Donovan* en banc court continued:

> [A] "plan, fund, or program" [exists] under ERISA ... if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.

*Donovan*, 688 F.2d at 1373. The purchase of insurance at issue in this case fits within this definition of a § 1002(1) "plan, fund, or program." The intended benefits are, of course, the medical care provided under the insurance policy. The class of beneficiaries is composed of the workers who chose to purchase the group health insurance.[4] The source of financing is the employee-paid premium supplemented by the monthly $75 employer contribution. Finally, the procedures for receiving benefits are those set out in the insurance policy.[5]

---

fered by an insurer to employees or members of an employee organization, under which
(1) No contributions are made by an employer or employee organization;
(2) Participation in the program is completely voluntary for employees or members;
(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs, and to remit them to the insurer; and
(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with the payroll deductions or dues checkoffs.
29 C.F.R. § 2510.3-1(j) (1992).

**3.** It remains an unsettled legal question whether the safe harbor regulations' description of group insurance programs excluded from the ERISA welfare plan definition is exhaustive—i.e., whether *all* group insurance programs that (1)

meet the threshold definitional requirements for a "plan, fund, or program" under 29 U.S.C. § 1002(1), *see infra* page 1550, and that (2) fall outside of the safe harbor exception necessarily qualify as ERISA employee welfare benefit plans under § 1002(1). It is not necessary for us to resolve this question in order to decide this case. As the instant insurance program clearly falls both outside of the scope of the safe harbor exception and within the case law definition of an ERISA welfare plan, the program qualifies as an ERISA plan regardless of whether the regulations' exception is exhaustive.

**4.** This "class" is quite small, being composed of only two persons—Bruce Randol and the one other Ed's Tire Center employee who chose to participate. However, this court has previously held that for the purposes of the *Donovan* definition of an ERISA plan, the requirement that there exist an identifiable class of beneficiaries is satisfied even if the benefit in question is conferred on only a single person. *See Williams v. Wright*, 927 F.2d 1540, 1545 (11th Cir.1991).

**5.** In *Donovan* the en banc court held that there is no requirement that the employer play any role in administering the plan in order for it to

■ Since the instant insurance plan qualifies as a "plan, fund, or program," as that term is used in § 1002(1), then whether the plan satisfies the full § 1002(1) definition of an ERISA employee welfare benefit plan depends on whether it was "established or maintained by [the] employer." We hold that through his actions the employer in this case has "maintained" the plan within the meaning of ERISA.[6] The employer wrote the first check purchasing the policies, established a system whereby the premiums would be paid monthly by means of a bank draft on the corporate account, contributed $75 per employee per month toward the premiums, and collected from the employees the balance of the premiums through a withholding system. Moreover, the employer did the foregoing in order to facilitate his employees' obtaining health coverage. We find that these undisputed facts amply demonstrate that the employer "maintained" the plan. Thus, the insurance policy at issue in this case qualifies as an ERISA employee welfare benefit plan under 29 U.S.C. § 1002(1).

Appellants cite *Taggart Corp. v. Life and Health Benefits Admin., Inc.*, 617 F.2d 1208 (5th Cir.1980), *cert. denied*, 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981),[7] as authority for the proposition that the "bare" purchase of a health insurance policy cannot constitute establishment or maintenance of an ERISA employee welfare benefit plan. However, *Taggart* was subsequently limited by the opinion of the *Donovan* en banc court which stated:

> Although we agree with the holding in *Taggart*, we find the reasoning of the opinion that Taggart Corporation did not

have a "plan, fund or program" encourages too broad an interpretation. If *Taggart* is interpreted to mean ERISA does not regulate purchases of health insurance when there is no welfare plan, we agree. The purchase of insurance is only a method of implementing a plan, fund, or program and is evidence of the existence of a plan but is not itself a plan. If *Taggart* implies that an employer or employee organization that only purchases a group health insurance policy or subscribes to a [multiple employer trust] to provide health insurance to its employees or members cannot be said to have established or maintained an employee benefit plan, we disagree. To that extent *Taggart* shall no longer be binding in the Eleventh Circuit.

*Donovan*, 688 F.2d at 1375. Thus, *Donovan* limited *Taggart* to its facts. The employer in *Taggart* had simply informed its employees of the availability of group health insurance and had established a system whereby the monthly premium would be deducted from the paycheck of the one employee who chose to participate. Participation was voluntary and the employer did not subsidize purchase of the policy. *See Wickman v. Northwestern National Insurance Co.*, 908 F.2d 1077, 1082-83 (1st Cir.), *cert. denied*, 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990) (describing facts of *Taggart*). In *Donovan*, we agreed that the employer's actions in *Taggart* did not constitute "maint[enance]" of an ERISA plan. Indeed, the *Taggart* plan would appear to be excluded from the ERISA welfare plan definition under the Labor Department's safe harbor regula-

---

be deemed an ERISA employee welfare benefit plan. Thus, a commercially purchased insurance policy under which the procedures for receiving benefits are all dictated by the insurance carrier can constitute a plan for ERISA purposes. *Donovan*, 688 F.2d at 1374. *See International Resources, Inc. v. New York Life Ins. Co.*, 950 F.2d 294, 297-98 (6th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 2941, 119 L.Ed.2d 565 (1992); *Brundage-Peterson v. Compcare Health Services Ins. Corp.*, 877 F.2d 509, 510-11 (7th Cir.1989). Indeed, the § 1002(1) definition expressly contemplates and encompasses benefits "provid[ed] ... through the purchase of insurance."

**6.** Having found that the employer has "maintained" the plan, we need not decide whether his degree of involvement in setting up the insurance program at the outset was sufficient for him to be deemed to have "established" the plan as well within the meaning of 29 U.S.C. § 1002(1).

**7.** Decisions of the former Fifth Circuit handed down prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

tions. The facts of the instant case differ significantly from those of *Taggart* in that here the employer not only established a system for withholding premiums from employee wages and paying them directly to the carrier, but also contributed $75 per employee toward the monthly premium and did so for the purpose of helping the employees obtain health insurance coverage. We hold that such conduct constitutes "maint[enance of] ... [a] plan, fund, or program ... for the purpose of providing[,] ... through the purchase of insurance[,] ... medical, surgical, or hospital care or benefits" within the meaning of 29 U.S.C. § 1002(1).

## III. CONCLUSION

Because the insurance program at issue in this case qualifies as an ERISA employee welfare benefit plan under 29 U.S.C. § 1002(1), appellants' state law claims "relate to [an ERISA] employee benefit plan" and therefore are preempted under 29 U.S.C. § 1144(a). The district court thus acted properly in dismissing those claims.

AFFIRMED.