Judith Jordan NICHOLS, Plaintiff,

v.

SOUTHEAST HEALTH PLAN OF ALABAMA, INC.; Charles Hayes Real Estate, Inc.; and Coldwell Banker, Defendants.

Civ. A. No. 93–0481–P–C.

United States District Court,
S.D. Alabama.
Southern Division.

Dec. 20, 1993.

David F. Daniell, Mobile, AL, for plaintiff.

Patricia Clotfelder, Wesley C. Redmond, Birmingham, AL, Lester McIntyre, Saraland, AL, for defendants.

## ORDER

PITTMAN, Senior District Judge.

This case is before the court on the defendants' motion to dismiss (tab 4), the plaintiff's objection to the notice of removal (tab 6), and the plaintiff's motion to remand (tab 19). For the reasons set forth below, the motion to remand (tab 19) is GRANTED, and this case is REMANDED to the Circuit Court of Mobile County, Alabama for further proceedings. The plaintiff's attorney fees and costs on removal are not taxed to the defendants, and this court does not reach the defendants' motion to dismiss.

Plaintiff, Judith Jordan Nichols (Nichols), filed this suit in the Circuit Court of Mobile County, Alabama. In the suit, she raised state law claims of negligence, wantonness, breach of contract, misrepresentation, and suppression.

The defendants, Charles Hayes Real Estate, Inc. (Hayes Real Estate), Southeast Health Plan of Alabama, Inc. (Southeast), and Coldwell Banker, removed this suit to federal court, asserting that plaintiff's claims were preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, *et seq.*

I. *Findings of Fact*

The following facts are undisputed:

A. Undisputed Facts

Nichols began working for Hayes Real Estate in June of 1991. Hayes Real Estate did not provide health insurance benefits for its employees. Barbara Hayes (Mrs. Hayes), co-owner of Hayes Real Estate, agreed to pay $100.00 per month from her personal checking account towards Ms. Nichols's insurance premium. Each month, Nichols would give Mrs. Hayes $38.00, along with her premium notice. Mrs. Hayes would then write a check for $138.00, the amount of Nichols's premium, to the insurance company. Hayes Real Estate did not take a tax deduction for the $100.00, and never claimed it as a business expense.

Southeast offered insurance to members of the Alabama Association of Realtors (Association), as well as to the members' employees. Hayes Real Estate was a member of the Association. The Association provided a list of its members to Southeast. Southeast gave promotional literature to the Association, which passed it on to its members.

Participation in the insurance program was purely voluntary, and those who chose to enroll had to send their premium checks directly to Southeast. The Association played no role in administering the insurance program.

Nichols's insurance policy, which was written by Southeast, went into effect on July 1, 1991. Hayes Real Estate was a member of the Association, and merely publicized the policy to its employees. Hayes Real Estate did not endorse the policy, and did not collect premiums through payroll deductions. Hayes Real Estate did not contribute to the premiums of any of its 40 odd employees, although a number carried Southeast insurance.

Before January of 1992, Nichols had a mass removed from one of her breasts. This procedure was covered under the insurance contract, and was pre-approved by Southeast. However, payment was not made, and Nichols had to bear these expenses herself.[1]

The following facts are in dispute:

---

**1.** Southeast reimbursed Ms. Nichols after this lawsuit was filed.

### B. Disputed Facts

Nichols alleges that Mrs. Hayes failed to pay Nichols's January 1992 insurance premium to Southeast. Nichols also alleges that Mrs. Hayes failed to forward mail, including the premium notice, to Nichols.

## II. *Conclusions of Law*

Since there is no ERISA plan involved in this case, plaintiff's motion to remand should be granted. However, plaintiff should not recover her costs and fees incurred as a result of the removal. Because remand should be granted, this court should not reach the defendants' motion to dismiss.

### A. Remand

■ In ruling on a motion to remand, the non-movant bears the burden of showing that the requirements for removal have been met. *Gould v. Artisoft, Inc.,* 1 F.3d 544, 547 (7th Cir.1993). *See Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144, 148 (1921). Thus, defendants bear the burden of showing that this court has subject matter jurisdiction under ERISA.

■ Claims which "relate to" employee benefit plans under ERISA are within the exclusive jurisdiction of the federal courts. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 62, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55, 63 (1987), *on remand Taylor v. General Motors Corp.,* 826 F.2d 452 (6th Cir.1987). *See* 29 U.S.C. §§ 1105, 1109. The term "relate to" is given a broad reading, thus, a state law claim having any connection with or reference to an employee benefit plan gives rise to ERISA jurisdiction. *Id.* at 62–63, 107 S.Ct. at 1546; *Howard v. Parisian, Inc.,* 807 F.2d 1560, 1563 (11th Cir.1987).

■ For this court to have subject matter jurisdiction over this case, the arrangements regarding Nichols's health insurance must constitute an employee benefit plan within the meaning of ERISA. Because the arrangements do not constitute an ERISA plan, Nichols's claims are not preempted, and this court lacks subject matter jurisdiction.

The health insurance, which was paid for in part by Mrs. Hayes, does not constitute an employee welfare benefit plan. The term "employee welfare benefit plan" is defined as:

> any plan, fund, or program ... established or maintained by an employer ... to the extent that such plan ... was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... medical, surgical, or hospital care or benefits....

29 U.S.C. § 1002(1).

■ A plan requires: (1) a plan, fund, or program; (2) established or maintained; (3) by an employer; (4) for the purpose of providing medical, surgical, or hospital care; (5) to participants or their beneficiaries. *Donovan v. Dillingham,* 688 F.2d 1367, 1371 (11th Cir.1982) (en banc).

■ While the purchase of insurance for an employee by an employer is evidence that an ERISA plan has been created, the purchase—by itself—is not sufficient to conclusively establish that a plan has been created. *Donovan,* 688 F.2d at 1373. An employer's purchase of group health insurance for its employees can fall within the definition of a plan. *Randol v. Mid–West National Life Ins. Co.,* 987 F.2d 1547, 1550 (11th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 180, 126 L.Ed.2d 139 (1993).

However, there was no purchase of group health insurance by the *employer* in this case. Hayes Real Estate did not provide health insurance to its employees. Rather, Mrs. Hayes personally paid part of the health insurance premium for one employee, the plaintiff.

This case falls within the "safe-harbor" regulations. An insurance plan which falls within the safe harbor is not subject to regulation under ERISA, 29 C.F.R. § 2510.3–1(a)(1), and thus does not lead to ERISA jurisdiction. *Cf. Howard,* 807 F.2d at 1563.

As the Eleventh Circuit has recognized, the regulations flesh out the definition of an employee benefit plan. *Randol,* 987 F.2d at 1549. In *Randol,* the plan in question did not fall within the regulatory safe harbor.

*Id.* at 1549–50. Here, however, Nichols's health insurance does fall within the safe harbor, therefore no ERISA plan exists.

The pertinent regulation provides that the definition of an employee benefit plan does not include insurance offered to employees where no contribution is made by the employer. In order to fall within the safe harbor, the requirements are that:

(1) No contributions are made by an employer or employee organization;

(2) Participation [in] the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer, and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3–1(j).

■ The health insurance at issue meets all the safe harbor requirements. Hayes Real Estate, Nichols's employer, made no contributions toward the insurance premiums, for any of its employees. ERISA defines an employer as:

any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan.

29 U.S.C. § 1002(5). This definition is, of course, circular. *Cf. Nationwide Mut. Ins. Co. v. Darden,* —— U.S. ——, ——, 112 S.Ct. 1344, 1348, 117 L.Ed.2d 581, 589 (1992), *on remand Darden v. Nationwide Mut. Ins. Co.,* 969 F.2d 76 (4th Cir.1992) (ERISA statute's definition of employee is circular). Thus, the *Darden* Court held that the common law definition of the term employee applied to ERISA. *Id.*[2]

■ Mrs. Hayes cannot be considered Ms. Nichols's employer for the purposes of ERISA. Even assuming, for the sake of argument, that she is an officer or director of Hayes Real Estate, that status does not make Mrs. Hayes an ERISA employer. *Sasso v. Cervoni,* 985 F.2d 49, 50 (2d Cir.1993), *cert. denied Bourgal v. Cervoni,* —— U.S. ——, 113 S.Ct. 2964, 125 L.Ed.2d 664 (1993); *Plumber's Pension Fund v. Niedrich,* 891 F.2d 1297, 1298 (7th Cir.1989), *cert. denied* 495 U.S. 930, 110 S.Ct. 2169, 109 L.Ed.2d 499 (1990). Even the sole shareholder and CEO of a business is not am employer under ERISA. *Scarbrough v. Perez,* 870 F.2d 1079, 1083 (6th Cir.1989). *Accord Meredith v. Time Ins. Co.,* 980 F.2d 352, 357 (5th Cir. 1993).

Furthermore, Mrs. Hayes's premium payments do not constitute employer contributions under the "acting … indirectly in the interest of an employer" portion of the definition. These words have not received much treatment in the caselaw. However, their meaning is clarified in a series of opinion letters issued by the Department of Labor.[3]

In *Meredith,* the Fifth Circuit recognized the importance of the Department of Labor's interpretation of ERISA terms:

ERISA has produced a complex and highly technical regulatory program. The identification and classification of persons and plans covered requires a considerable degree of dedicated expertise. Moreover, the statute itself lends little guidance to this significant question. We conclude that Congress intended in ERISA to delegate to the Secretary of Labor broad policy-making discretion in the promulgation of regulations to fill in the gaps with respect to the finite definition of *employer* and employee under the statute.… [A]s long as the Secretary's interpretation is reasonable, we are not wont to substitute our judgment.

---

**2.** The common law to be applied was the general common law of agency, and not the common law of a specific state. *Id.* at n. 3.

**3.** An opinion letter is an advisory opinion given by the Department of Labor.

*Meredith*, 980 F.2d at 357–58 (internal citations, footnotes, and quotations omitted; emphasis added).

■ Furthermore, where the Department of Labor has specifically defined a particular term, the common law definition is trumped by the Department's definition if the two do not agree. In *Meredith*, the Fifth Circuit adopted the Department's regulatory definition that one spouse cannot be the employee of the other. *Meredith*, 980 F.2d at 357. Commentators noted that the Fifth Circuit adopted the Department's definition despite the Department's deviation from the common law, and even though the Fifth Circuit cited *Darden* as the grounds for its decision. *See Fifth Circuit Ignores ELR Disapproval of DOL Regulation Defining the Term 'Employee,'*, No. 1 ERISA Litig. Rep. (P–H) 19 (February 1993).

■ The Fifth Circuit's deference to the Secretary's interpretation is consistent with the dictates of the Supreme Court. In *Chevron United States, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 *reh'g denied* 468 U.S. 1227, 105 S.Ct. 28, 82 L.Ed.2d 921 (1984), the Court held that, unless Congress has directly spoken to the question at issue, courts must give considerable deference to a department's construction of a statute which it is entrusted to administer. *Chevron*, 467 U.S. at 842, 844, 104 S.Ct. at 2781, 2782. Thus, deference to agency interpretations is appropriate, as the *Meredith* court noted, when "the distinctive institutional capacities of the agency are called into play." Cass R. Sunstein, *Constitutionalism After the New Deal*, 101 Harv.L.Rev. 421, 469 (1987). Given the complexity of the ERISA statutory and regulatory scheme, the Department of Labor's "distinctive institutional capacity" is certainly "called into play" in interpreting the statutory definition of an employer; particularly when, as here, the real issue is whether a plan falls within the Department's own regulatory safe harbor.

In a series of opinion letters, the Department of Labor has clarified the meaning of the term "acting indirectly for the benefit of employer." In these letters, the Department's opinion was sought as to whether certain "employee leasing" arrangements led to the creation of ERISA plans. In *South Carolina Department of Insurance*, a "staff leasing" company provided employees for a number of client companies. *South Carolina Department of Insurance*, Op. 92–07 A, 1992 ERISA LEXIS 8 (Dep't of Labor February 20, 1992). Some of these clients entered into contracts with the leasing company in order to allow their existing employees to get benefits through the staff leasing company.[4] Because the client, and not the leasing company, retained the right to fire some employees, the client—and not the leasing company—was the ERISA employer with respect to these employees. For other employees, where the client did not retain the right to fire the employee, the leasing company became the ERISA employer.

Both *Georgia Insurance Department* and *Texas State Board of Insurance* also involved staff leasing arrangements. *Georgia Insurance Department*, Op. 92–05 A, 1992 ERISA LEXIS 1 (Dep't of Labor January 27, 1992); *Texas State Board of Insurance*, Op. 92–04 A, 1992 ERISA LEXIS 2 (January 27, 1992). Again, where the client retained the right to fire the employee, the client was the ERISA employer, and where the leasing company had the sole right to do so, the leasing company was the ERISA employer.

■ Thus, when these opinion letters are read together, it becomes clear that the term "acting ... indirectly in the interest of an employer" refers to an entity which becomes the *de facto* employer of a person, after that person's employer has given up direct control over the person, but has retained the fruits of that person's labor. Mrs. Hayes did not become Ms. Nichols's *de facto* employer, because Hayes Real Estate, and not Mrs. Hayes, paid Ms. Nichols's salary and retained the right to directly control her activities.

---

**4.** This is commonly referred to, when assets other than human beings are involved, as a "sale- leaseback" arrangement.

Since Mrs. Hayes was not Nichols's employer, her premium payments do not bring this case outside the safe harbor.[5]

The purchase of the Southeast policy was purely voluntary. Hayes Real Estate did not endorse the Southeast policy, and received no consideration from Southeast. Thus, this case falls within the safe harbor provisions.

 Because this case falls within the safe harbor, no ERISA plan is created. Since there is no ERISA plan, ERISA does not preempt plaintiff's state law claims. Because there is no preemption, this court lacks subject matter jurisdiction. Thus, the plaintiff's motion to remand should be granted.[6]

### B. Defendant's Motion to Dismiss

 Because this case is remanded, the defendants' motion to dismiss is not considered. A federal court lacking subject matter jurisdiction over a removed case must remand it to the state court from whence it came. *See* 28 U.S.C. § 1447(c). A federal court lacking subject matter jurisdiction cannot rule on other pending motions. Charles A. Wright & Arthur Miller, *Federal Practice & Procedure* § 3739 (1985 & Supp.1993). *See In re Bear River Drainage Dist.*, 267 F.2d 849, 851 (10th Cir.1959).

### C. Costs and Fees

Plaintiff seeks reimbursement from the defendants for costs and fees incurred as a result of the removal. Such costs and fees are recoverable if a removed case is remanded. 28 U.S.C. § 1447(c).

 Under Section 1447(c), the award of costs and fees is purely discretionary with the court. *Liebig v. Dejoy*, 814 F.Supp. 1074, 1077 (M.D.Fla.1993); *IMCO U.S.A., Inc. v. Title Ins. Co. of Minnesota*, 729 F.Supp. 1322, 1324 (M.D.Fla.1990). Thus, for instance, courts have awarded costs and fees where the removal notice was untimely filed, *Liebig*, 814 F.Supp. at 1077, and denied it if the removing party asserts that the removal petition was filed in good faith. *IMCO*, 729 F.Supp. at 1324.

 It appears that this removal petition was filed in good faith. Thus, the plaintiff's attorney fees should not be taxed to the defendants.

### III. *Conclusion*

For the reasons set forth above, it is OR-DERED, ADJUDGED, and DECREED that the plaintiff's motion to remand (tab 19) be GRANTED.

DONE.

---

5. Nor can the Association be considered Nichols's employer for ERISA purposes. Professional and business associations are not considered ERISA employers, because membership in such associations depends upon professional, not employment, status. *MDPhysicians & Associates, Inc. v. State Bd. of Ins.*, 957 F.2d 178, 182 (5th Cir.1992), *cert. denied* —— U.S. ——, 113 S.Ct. 179, 121 L.Ed.2d 125 (1992). The Department of Labor has also taken this position. Groom & Nordberg, Op. 83–15 A, 1983 ERISA LEXIS 43, *10 (Dep't of Labor March 22, 1983).

6. Furthermore, defendants' contention that the motion to remand should be denied as untimely is without merit. This court has a continuing duty to examine its subject matter jurisdiction. Thus,

> [w]henever it appears by suggestion of the parties *or otherwise* that the court lacks jurisdiction of the subject matter, the court *shall* dismiss the action.

Fed.R.Civ.P. 12(h)(3) (emphasis added). When the case before the court has been removed from state court, the proper remedy for the lack of subject matter jurisdiction is to remand it from whence it came. 28 U.S.C. § 1447(c). Unlike a motion to remand based on technical defects in the removal procedure, there is no time limit upon a remand for lack of subject matter jurisdiction. *Id.*