**Tracy L. ALBRIGHT, Plaintiff,**

v.

**UNION BANKERS INSURANCE COMPANY, Defendant.**

**No. 98–2236CIV.**

United States District Court,
S.D. Florida,
Miami Division.

July 19, 1999.

Pamela Jackson Reynolds, Coral Gables, FL, for plaintiff.

Keith Douglas Diamond, Miami, FL, John R. Bello, Chorpenning Good Gibbons & Cohn, Tampa, FL, for defendant.

## ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment (DE # 33).

UPON CONSIDERATION of the motion, responses, materials submitted, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

### BACKGROUND

Plaintiff Tracy L. Albright ("Plaintiff") brought this action asserting state law claims for breach of contract damages, declaratory and supplemental relief, and a temporary injunction to remedy Defendant's alleged failure to provide and pay for medical care and treatment to Plaintiff for her HIV/AIDS condition.

According to the facts viewed in the light most favorable to Plaintiff, Plaintiff first met Victor Perez in September 1992. Mr. Perez is the sole officer and shareholder of A–1 Management Services, Inc. ("A–1 Management")—a property management

company, as well as the President and sole owner of A–1 Maintenance of South Florida Corp. ("A–1 Maintenance")—a property maintenance company. In 1994, Plaintiff and Mr. Perez went through a marriage ceremony; however, they were never legally married.

Prior to his relationship with Plaintiff, Mr. Perez had operated A–1 Management without other employees. In March 1993, however, Plaintiff began working for A–1 Management as the office manager. At Plaintiff's request, Mr. Perez provided Plaintiff with health care insurance and an insurance agent who issued Plaintiff an insurance policy.

A–1 Management provided the insurance agent who issued Plaintiff a policy with the initial premium for the insurance policy. Thereafter, the premiums for the insurance policy were automatically withdrawn from the A–1 Management account. Plaintiff claims that her salary was reduced in return for the insurance.

No other employees of A–1 Management have been offered health insurance. Plaintiff claims that she was given insurance as Mr. Perez's marital partner—not in her capacity as an employee. Further, Plaintiff has claimed that except for the initial check for a premium payment, all payments paid by A–1 Management for insurance were made through automatic deductions by the bank in lieu of an increase in Plaintiff's salary as an employee of A–1 Management.

Plaintiff's employment with A–1 Management was terminated in November 1995, at which time she had been diagnosed HIV Positive. She continued her health insurance policy, reimbursing A–1 Management in cash on a quarterly basis.

## DISCUSSION

### 1. Summary Judgment Standard

The standard to be applied in reviewing a summary judgment motion is stated unambiguously in Rule 56(c) of the Federal Rules of Civil Procedure:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. *See Twiss v. Kury,* 25 F.3d 1551, 1554 (11th Cir.1994). The moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.*

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Id.* However, the non-moving party:

> may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Rule 56(e), Fed.R.Civ.P. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden" applicable to the particular cause of action before it. *Anderson,* 477 U.S. at 254, 106 S.Ct. 2505. If the non-movant fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted. *Id.* at 254–55, 106 S.Ct. 2505.

Additionally, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *Id.*

## II. ERISA Preemption

Since ERISA was enacted in 1974, the Act has preempted state law claims arising under virtually all private employer-sponsored pension and welfare plans, including life, health, and disability plans. *See Pilot Life Ins. v. Dedeaux,* 481 U.S. 41, 45, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *see also Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 728, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) (holding that ERISA "comprehensively regulates" employee welfare plans). Indeed, if a claim "relates to" an ERISA plan, it is preempted by the Act. *See* 29 U.S.C. § 1144(a).

Under ERISA, an employee welfare benefit plan is defined as follows:

> [A]ny plan, fund or program which was heretofore or is hereafter established and maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise,

> (A) medical, surgical or hospital care or benefits in the event of sickness, accident, disability, death or unemployment. . . .

29 U.S.C. § 1002(1).

The Eleventh Circuit has held that "a plan, fund or program under ERISA is established if, from the surrounding circumstances, a reasonable person could ascertain the intended benefits, class of beneficiaries, source of financing, and the procedures for receiving benefits." *Donovan v. Dillingham,* 688 F.2d 1367 (11th Cir.1982).

As indicated by the deposition of Mr. Perez, it is clear that the plan at issue comports with these requirements. Specifically, the intended benefits are medical benefits, the class of beneficiaries includes A–1 Management employees, A–1 Management paid for premiums and/or provided financing after Plaintiff's employment was terminated, and the means for receiving benefits involved filing a claim under the medical policies.

Furthermore, ERISA may apply to an employee welfare-benefit plan, even though an employer's involvement in the plan is limited to the purchase of insurance. *See, e.g.,* 29 U.S.C. § 1002(1); *Madonia v. Blue Cross & Blue Shield,* 11 F.3d 444, 447 (4th Cir.1993), *cert. denied,* 511 U.S. 1019, 114 S.Ct. 1401, 128 L.Ed.2d 74 (1994); *Randol v. Mid–West Nat'l Life Ins. Co.,* 987 F.2d 1547, 1551 (11th Cir. 1993), *cert. denied,* 510 U.S. 863, 114 S.Ct. 180, 126 L.Ed.2d 139 (1993).

In *Randol v. Mid–West National Life Insurance Company,* the Eleventh Circuit confronted a set of facts similar to those at issue in the instant matter. In *Randol,* the plaintiff was an employee of a small business that had three employees. Prior to March 1988, the employer offered no insurance benefits. However, in March 1988, the plaintiff decided that he wanted to purchase major medical insurance. The employer permitted an insurance agent to meet with his employees, and following the

meeting, the plaintiff and another employee purchased medical insurance. *See id.* at 1548–49.

Pursuant to the terms of the insurance agreement, the premium payments were drawn from the employer's bank account, and the employer contributed $75 to the cost of the monthly premium for each employee who participated in the plan. The remainder of the funds were deducted from the participating employees' paychecks. *See id.* at 1549.

The employer in *Randol* did not intend to establish an insurance plan, nor did he comply with ERISA recording requirements. Further, the employees who participated in the insurance plan were underwritten as individuals. Nonetheless, the Eleventh Circuit found that the insurance policy at issue qualified as an ERISA employee welfare benefit plan. Specifically, the court held:

> We hold that through his actions the employer in this case has "maintained" the plan within the meaning of ERISA. The employer wrote the first check purchasing the policies, established a system whereby the premiums would be paid monthly by means of a bank draft on the corporate account, contributed $75 per employee per month toward the premiums, and collected from the employees the balance of the premiums through a withholding system. Moreover, the employer did the foregoing in order to facilitate his employees' obtaining health coverage. We find that these undisputed facts amply demonstrate that the employer "maintained" the plan. Thus the insurance policy at issue in this case qualifies as an ERISA employee welfare benefit plan under 29 U.S.C. § 1002(1).

*Randol,* 987 F.2d at 1551.

Like those of the employer in *Reynolds,* the actions of A–1 Management demonstrate that the insurance plan at issue is governed by ERISA. To begin, A–1 Management paid for all insurance premiums

on its employees' insurance policies through an automatic withdrawal from its checking account. Notably, these payments were characterized by Mr. Perez as benefits of employment with A–1 Management. In addition, following Plaintiff's termination, A–1 Management continued to pay the premiums on Plaintiff's policy, thus guaranteeing Plaintiff's coverage under the policy. Finally, in paying insurance premiums on a monthly basis, but receiving payments from Plaintiff on a quarterly basis, A–1 Management helped to provide additional financing for Plaintiff's insurance.

Plaintiff asserts that the insurance policy at issue was provided by A–1 Management not because of her status as an employee, but because of her relationship with Mr. Perez as his companion and marital partner. In doing so, she claims that where an employee is the spouse of an owner of a business, and no other employees are covered by a benefit plan, an ERISA plan has not been established.[1] However, Plaintiff has offered no support for her proposition that her relationship with Mr. Perez is the equivalent of a legal marriage.

Plaintiff also asserts that once she was terminated by A–1 Management, her insurance policy was no longer governed by ERISA. However, the continuation of payments by an employee into an insurance policy after his or her termination does not change coverage under a policy governed by ERISA. Rather, this constitutes a continuation of coverage, and ERISA continues to govern the insurance policy. *See Massachusetts Casualty Ins. Co. v. Reynolds,* 113 F.3d 1450 (6th Cir. 1997). Furthermore, in the instant case, A–1 Management continued to finance Plaintiff's premiums following Plaintiff's termination. As such, Plaintiff's termination did not remove her insurance plan from the reaches of ERISA.

---

1. In support of her assertion, Plaintiff directs the Court to 29 C.F.R. § 2510.3–3(c)(1) (1998), and *Williams v. Wright,* 927 F.2d 1540, 1545 (11th Cir.1991).

## CONCLUSION

Because the insurance program at issue in this case qualifies as an ERISA employee welfare benefit plan under 29 U.S.C. § 1002(1), Plaintiff's state law claims relate to an ERISA employee benefit plan and are therefore preempted by ERISA.

Accordingly, it is ORDERED AND ADJUDGED that the Motion be, and the same is hereby, GRANTED. This case is DISMISSED, with leave to refile the Complaint within twenty (20) days of the date of this Order.

All other pending motions not otherwise ruled upon are hereby DISMISSED AS MOOT.