Thomas NIX, Plaintiff,

v.

**UNITED HEALTH CARE OF ALA., INC., et al., Defendants.**

**No. CIV. A. 01–D–686–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Nov. 1, 2001.

---

Cavender C. Kimble, Mark E. Tindal, Balch & Bingham, Daniel S. Wolter, Gaines, Wolter & Kinney, Birmingham, AL, for defendants.

Tiernan W. Luck, III, G. Robert Prescott, Luck Prescott & Associates, Montgomery, AL, for plaintiff.

### *MEMORANDUM OPINION AND ORDER*

DE MENT, District Judge.

Before the court is Plaintiff Thomas Nix's ("Plaintiff") Motion To Remand and supporting brief, filed July 13, 2001. Defendant United Health Care, Inc. ("United") filed an Opposition To Motion To Remand ("Opposition") on July 31, 2001.

Thereafter, the court granted United time for discovery on the issue of subject matter jurisdiction, after which United filed a Supplemental Opposition To Plantiff's Motion To Remand ("Supplemental Opposition") on September 28, 2001. After careful consideration of the arguments of the parties, the relevant law, and the record as a whole, the court finds that Plaintiff's Motion To Remand is due to be denied.

## I. FACTS

In October of 1997, Crystal Pools, Inc., purchased a medical insurance policy from United through its broker, Defendant Vincent Cedrone ("Cedrone").[1] The policy purchased was entitled "United Healthcare Of Alabama, Inc. Group Policy."[2] The insurance policy was entered into between United and Crystal Pools, Inc.[3] Plaintiff and his wife Sonya were the sole owners of Crystal Pools, Inc.[4] "During the time relevant to [Plaintiff's] claims, [they] had no employees."[5] However, discovery revealed that when Crystal Pools, Inc., originally purchased the insurance policy, the two employees listed on the application were Plaintiff and Gerald Walters ("Walters").[6] Plaintiff submitted a claim under the insurance policy, which was denied.[7]

Plaintiff filed suit in the Circuit Court of Montgomery County, Alabama, alleging several state law claims relating to the denial of the claim made under the insurance policy.[8] Defendants filed a Notice Of Removal on June 8, 2001, asserting that Plaintiff's claims were preempted by the Employee Retirement Income Security

---

1. Spain Decl. Attach. Bates # UHC–88–89.

2. Def. Supplemental Opp'n, Ex. 4, Bates # UHC–001.

3. *Id.*, Bates # UHC–007.

4. Pl. Aff., ¶ 2.

5. Pl. Aff., ¶ 4.

6. *Id.*, Ex. 1—Pl. Dep. at 17:14–21:5.

7. Compl., ¶ 12; Spain Decl., ¶ 2.

8. Compl., ¶ 19–47.

Act ("ERISA"), 29 U.S.C. §§ 1001–1461. Plaintiff now seeks to have the case remanded.

## II. REMAND STANDARD

■ A defendant, as the party removing an action to federal court, has the burden to establish federal jurisdiction. *See Diaz v. Sheppard,* 85 F.3d 1502, 1505 (11th Cir.1996).

Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.

*Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (citations omitted).

■ "A presumption in favor of remand is necessary because if a federal court reaches the merits of a pending motion in a removed case where subject matter jurisdiction may be lacking it deprives a state court of its right under the Constitution to resolve controversies in its own courts." *See Univ. of S. Ala. v. Am. Tobacco Co.,* 168 F.3d 405, 411 (11th Cir.1999). Furthermore, any order by a federal court lacking subject matter jurisdiction, other than an order of dismissal or remand, is void. *See Christopher v. Stanley–Bostitch, Inc.,* 240 F.3d 95, 100 (1st Cir.2001); *Shirley v. Maxicare Texas, Inc.,* 921 F.2d 565, 568 (5th Cir.1991).

## III. DISCUSSION

### A. *Preemption*

■ Removal may be had when Congress so completely preempts an area of law that any civil complaint raising a certain group of claims is necessarily federal in character. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *see also Butero v. Royal Maccabees Life Ins. Co.,* 174 F.3d 1207, 1211–12 (11th Cir.1999). The United States Court of Appeals for the Eleventh Circuit has labeled such preemption, in the ERISA field, as "complete preemption." *Butero,* 174 F.3d at 1211–12 (citing *Taylor,* 481 U.S. at 63–64, 107 S.Ct. 1542). *See also Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998). ERISA was intended to completely preempt state law claims involving rights to recover benefits under employee benefit plans. *See Taylor,* 481 U.S. at 63–66, 107 S.Ct. 1542.

### B. *An ERISA "Employee Welfare Benefit Plan" Was Established*

■■ The first issue the court must address is whether an ERISA plan was instituted. In *Donovan v. Dillingham,* the Eleventh Circuit Court of Appeals laid out the test for whether an "employee welfare benefit plan" exists for the purposes of ERISA:

By definition ... a welfare plan requires (1) a "plan, fund, or program" (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits (5) to participants or their beneficiaries.

688 F.2d 1367, 1371 (11th Cir.1982).

■ First, a "plan, fund, or program" existed. Such a plan exists when there are "intended benefits, intended beneficiaries, a source of financing, and a procedure to

apply for and collect benefits." *Id.* at 1372. Here, the benefits included those provided by the Policy issued by United, such as medical and hospital care.[9] The intended beneficiaries were the employees of Crystal Pools, Inc., who worked 30 or more hours per week.[10] At the time the policy was purchased, the intended beneficiaries included Plaintiff and Walters.[11] The primary source of financing was Crystal Pools, Inc.[12] Plaintiff, in his deposition, states that Walters paid $10 of his $80 monthly premium and that Crystal Pools, Inc., paid the remaining $70.[13] In addition, the Employer Application to United stated that the employer would contribute 100% of the contributions required,[14] and a copy of a check from Crystal Pools, Inc., paying the entirety of an installment of the insurance premium, is included as Exhibit 5 to Defendant's Supplemental Opposition. The procedure for applying for and collecting benefits was outlined in the United Group Policy.[15]

Second, the plan was established. "A plan is 'established' when there has been some degree of implementation by the employer going beyond a mere intent to confer a benefit." *Butero,* 174 F.3d at 1214. As previously stated, in this case, the employer, Crystal Pools, Inc., paid most, if not all, of the insurance premiums on the plan.[16] Thus, a plan was established.

Third, the plan was established by an employer. Crystal Pools, Inc., is listed as the Company name on the Employer Application.[17] Fourth, the plan was purchased to provide benefits in the form of medical insurance.[18] Fifth, the plan was provided to participants or their beneficiaries. As previously stated, those participating in the plan at its inception were Plaintiff and Walters.[19]

Thus, an ERISA "employee welfare plan" was established and, at its inception, it covered Plaintiff and Walters. Sometime later, however, Walters ceased his employment with Crystal Pools, Inc.[20] Thereafter, United was reviewing its files and discovered that only one person was employed by Crystal Pools, Inc., and the Policy required that a minimum of two Eligible Persons be enrolled for coverage under the Policy.[21] United notified Sonya Nix, Plaintiff's wife, by a letter dated November 20, 1998, that the Policy for Crystal Pools, Inc. was coming up for renewal.[22] The letter also stated that United's records indicated the company only had one employee, and that, as previously discussed between Sonya Nix and a representative of United,[23] Sonya Nix could fill the

---

9. *See* Def. Supplemental Opp'n, Ex. 4.

10. *Id.,* Ex. 1—Pl. Dep. at 42:14–42:19.

11. *Id.,* Ex. 1—Pl. Dep. at 17:14–21:5.

12. *Id.,* Ex. 5.

13. *Id.,* Ex. 1—Pl. Dep. at 39:13–40:13.

14. *Id.,* Ex. 3.

15. *Id.,* Ex. 4. More specifically, see Sections 9—Procedures For Obtaining Health Services and 10—Covered Health Services, of Exhibit 4, Bates # UHC–034–38.

16. *See supra,* notes 12, 13 and 14.

17. Def. Supplemental Opp'n, Ex. 3.

18. *Id.,* Ex. 3.

19. *Id.,* Ex. 1—Pl. Dep. at 17:14–21:5.

20. Sonya Nix. Dep. at 46:23–47:3.

21. *Id.* at 47:4–47:12; 49:10–50:6; Def. Supplemental Opp'n, Ex. 4, Bates Stamp # UHC–007.

22. Def. Supplemental Opp'n, Exs. 6–7.

23. In her deposition, Sonya Nix states that Kristy Quarles, a representative of United, informed her that United only needed proof

eligible employee spot left by Walters.[24] Sonya Nix was required, however, to file wage and tax forms as proof of her employment with the company, and a change form and application, which she did.[25] On the United Change Request Form, signed by Sonya Nix and dated December 1, 1998, Sonya Nix changed from a dependent under her husband's coverage to an employee of Crystal Pools, Inc., so that the Policy could continue to remain in effect.[26]

### C. The Plan Continues To Be Governed By ERISA

The next issue the court must determine is whether replacing Walters with Sonya Nix extinguished the ERISA plan. Plaintiff argues that, because the plan covered only an owner and his spouse on the date he filed his claim, the plan does not fall within the scope of ERISA.[27] At first glance, his argument sounds convincing because the formation of an ERISA "employee welfare benefit plan" requires that benefits be provided to at least one employee, not including an owner of a business or a partner in a partnership, nor the spouse of the owner of a business or a partner in a partnership. *See Slamen v. Paul Revere Life Ins. Co.,* 166 F.3d 1102, 1104–05 (11th Cir.1999); *Peterson v. Am. Life & Health Ins. Co.,* 48 F.3d 404, 407 (9th Cir.1995); *Meredith v. Time Ins. Co.,* 980 F.2d 352, 357 (5th Cir.1993); *Williams v. Wright,* 927 F.2d 1540, 1545 (11th Cir.1991); 29 C.F.R. § 2510.3–3(c)(1).[28] Further analysis, however, requires the court to reach a conclusion contrary to Plaintiff's position. For the reasons that follow, the court finds that, regardless of the characteristics of the plan on the date Plaintiff filed his claim, ERISA governs the plan because the plan originally covered a non-owner employee.

First, the court finds that this case is distinguishable from *Slamen.* In *Slamen,* a dentist, who was the sole owner of his practice, purchased a disability insurance policy that covered only himself. 166 F.3d at 1103. When the insurance company refused to pay the dentist's claim under the policy, the dentist brought suit alleging a breach of contract claim. *Id.* at 1104. The insurance company removed the case, arguing ERISA preemption. *Id.* The district court agreed with the insurance company and, therefore, denied the plaintiff's motion to remand. On appeal, the issue was whether the plan was governed by ERISA. *Id.* Citing 29 C.F.R. § 2510.3–3(c)(1), the court held that the disability plan was not an ERISA plan, in part, "because no employees received any benefits under the plan." *Id.* at 1104.

In *Slamen,* there were never any non-owner employees covered or eligible to receive benefits under the disability plan. In other words, at no time did the plan in *Slamen* qualify as an ERISA plan, neither at its inception nor any time thereafter. The *Slamen* court, thus, had no occasion to address whether ERISA continues to govern a plan which was established as an ERISA plan but at some point ceased to be maintained as one.

---

that she had been paid money by Crystal Pools, Inc., and she could then be considered an employee, even if she considered herself an owner. Sonya Nix Dep. at 49:20–55:7.

24. Def. Supplemental Opp'n, Exs. 6–7.

25. *Id.*

26. *Id.,* Ex. 7.

27. Pl. Aff., ¶ 2.

28. "An individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse . . . ." 29 C.F.R. § 2510.3–3(c)(1).

Two district courts, however, *albeit* in non-published opinions, have addressed the same factual scenario and issue presented in this case. *See Miller, M.A., LMFCT v. Provident Life and Accident Ins. Co.,* No. CV99–9464ABCRNBX, 2000 WL 1341480 (C.D.Cal. Sept.5, 2000); *Jaffe v. Provident Life And Accident Ins. Co.,* No. 99–6302–CIV–DAVIS, 2000 WL 356407 (S.D.Fla. April 4, 2000). In *Miller,* the plaintiff was part owner of a counseling treatment center called Richard B. Miller, M.D., Inc. ("RBM"). *Id.* at *1. Among other insurance benefits, RBM provided the plaintiff and its employees with disability insurance. The plaintiff suffered a heart attack and filed for benefits under the disability policy. *Id.* at *2. At the time she filed her claim, there were no non-owner employees covered under the policy. *Id.* The plaintiff brought suit when the insured company quit paying her benefits under the policy. Despite the plaintiff's argument to the contrary, the *Miller* court concluded that the policy was "governed by ERISA, even though Plaintiff's claim for benefits arose after RBM had stopped employing non-owner employees ...." *Id.* at *4. The court explained:

> Employee benefit plans which are "heretofore or ... hereafter established or maintained by an employer" are governed by ERISA. 29 U.S.C. § 1002(1) & (2)(A) (emphasis added). The statutory definition's use of the word "or" supports [an] interpretation that an insurance policy that *was* part of an established ERISA plan is governed by ERISA even if the plan is no longer maintained as an ERISA plan by the employer.

*Id.* at *4. The court in *Jaffe* reached the same conclusion based upon analogous facts. 2000 WL 356407, at *1–2.

In reaching their conclusions, the *Miller* and *Jaffe* courts relied, in part, on the Ninth Circuit's decision in *Peterson, supra.* Therefore, a brief discussion of *Peterson* is warranted. In *Peterson,* the plaintiff was a partner in a company. 48 F.3d at 406. He obtained a health insurance policy for himself, his partner and their employees. *Id.* However, when the plaintiff submitted a claim under the policy, he was the only individual covered under that policy. *Id.* The Ninth Circuit held that because the policy was once clearly an ERISA policy, covering both partners and employees, the fact that it later covered only a partner, did not remove the policy from the scope of ERISA. *Id.* at 408.

The *Peterson* court based its holding, in part, on the fact that the policy "originally covered a non-partner employee in addition to Peterson and his partner." *Id.* at 408. Quoting 29 U.S.C. § 1002(1)'s definition of an "employee welfare benefit plan," the court explained that "[a] policy is governed by ERISA if it is *'established'* or maintained by an employer ... for the purpose of providing [medical insurance] for its participants or their beneficiaries." *Id.*

The court finds *Miller, Jaffe,* and *Peterson* to be persuasive and reaches the conclusion, as did these courts, that ERISA's definition of an "employee welfare benefit plan" means precisely what it says. *See CBS, Inc. v. PrimeTime 24 Joint Venture,* 245 F.3d 1217, 1226–29 (11th Cir.2001) (explaining that only in the rare instance where a statute produces an absurd result, should a court not apply a statute's plain meaning). The statute uses the disjunctive word "or," requiring only that the plan either be "established or maintained" as an ERISA plan. 29 U.S.C. § 1002(1) (emphasis added). It does not require, as Plaintiff seemingly argues, that the plan must be established *and* continually maintained as an ERISA plan. Applying the plain meaning of the statute, the court finds that

the phrase "established or maintained" by an employer covers the situation where, as here, an employer sets up an insurance plan for both owners and employees, but later all employees cease to work for the employer, leaving only the owners covered under the plan. In other words, it is enough under the statute that, at its inception, the plan was an ERISA plan, covering both an employee and a non-employee.[29] The court's interpretation of the statute is supported by other cases which have similarly interpreted the "established or maintained" language, *albeit* in different contexts. *See Reber v. Provident Life & Acc. Ins. Co.*, 93 F.Supp.2d 995, 1007 n. 8 (S.D.Ind.2000) (rejecting the plaintiff's argument "that even if the Policy were part of an ERISA plan when issued, it was not a part of an ERISA plan when [the insurance company] denied her claim;" and finding that, based upon ERISA's "established or maintained" language, where "an employer 'establishes' a plan, and that plan continues unchanged ... even after the employee ceases to work for the employer, the plan is still governed by ERISA."); *Nat'l Bus. Ass'n Trust v. Morgan*, 770 F.Supp. 1169, 1174–75 (W.D.Ky.1991) (trust fund established by group of employers was subject to and governed by ERISA, even though fund was not maintained by employers, "given the fact that 29 U.S.C. § 1002(1) provides that ERISA welfare benefit plans must either be established or maintained by employers").

Based on the foregoing, the court finds that the plan at issue is governed by ERISA. Therefore, ERISA preempts Plaintiff's state law claims.

#### D. *Cedrone*

■ Cedrone is also a Defendant to this action. The court notes that claims of fraud against an insurance agent may not necessarily be preempted by ERISA. *Morstein v. Nat'l Ins. Servs., Inc.*, 93 F.3d 715, 722–24 (11th Cir.1996). However, the court finds that in this case, Plaintiff claims no particular fraud against Cedrone, as opposed to the plaintiff in *Morstein,* but instead Plaintiff's claims are that fraud was committed against him by Cedrone because his medical insurance claims for an MRI were denied. The court finds such claims of fraud against the agent insufficient to prevent complete preemption by ERISA.

#### E. *Conclusion*

Plaintiff claims he was denied benefits to which he was entitled under a medical insurance policy. Defendant has proven that the insurance policy was established as an ERISA plan. In addition, the court finds that the established ERISA plan was not subsequently extinguished. Accordingly, the court finds that Plaintiff's state law claims are preempted by ERISA and that the court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

### IV. ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Plaintiff Thomas Nix's Motion To Remand be and the same is hereby DENIED. Plaintiff is granted leave to AMEND his complaint to state a cause of action under ERISA. Plaintiff is given until November 20, 2001 to amend his Complaint, if desired, to allege a claim or claims under ERISA. If Plaintiff elects not to file an amended complaint by November 20, the court will dismiss the action.

---

**29.** The court notes that in *Slamen,* the Eleventh Circuit Court of Appeals distinguished *Peterson,* observing that in *Peterson,* the policy "originally covered a non-partner employee in addition to Peterson and his partner." 166 F.3d at 1105 n. 3.