Martin H. STERN, M.D., Plaintiff,

v.

PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, Defendant.

No. 6:03–cv–947–ORL–31 JGG.

United States District Court, M.D. Florida, Orlando Division.

Dec. 18, 2003.

---

**70.** Tr. of May 8, 2003, at 173.

**71.** *Id.* at 113.

S. Sammy Cacciatore, Jr., Nance, Cacciatore & Hamilton, Melbourne, FL, for plaintiff.

John Edward Meagher, Jonathan M. Fordin, Shutts & Bowen, LLP, Miami, FL, for defendant.

## * AMENDED ORDER

PRESNELL, District Judge.

This cause comes for the Court's consideration on:

1) Plaintiff's Motion to Remand (Doc. 18);

2) Plaintiff's Memorandum in Support of the Motion to Remand (Doc. 19);

3) Defendant Provident Life and Accident Insurance Company's ("Provident") Response thereto (Doc. 26); and

* Amended to correct the year 1998 to 1988 on     Page 2 paragraph I under Background

4) Defendant's Amended Notice of Removal, or in the Alternative, Supplemental Response to Motion to Remand (Doc. 33).

## I. Background

Plaintiff Martin H. Stern, M.D., is an employee of Radiology Associates of Brevard, P.A. ("RAB"). In 1988, Plaintiff voluntarily purchased two policies for long-term disability insurance [1] from Defendant Provident, policy numbers 854115 and 846993. (Doc. 2, Composite Exs. A and B; see also Danner Aff. at ¶ 12). Initially, RAB paid the premiums on behalf of the physicians per a "Premium Payment Agreement" between RAB and Defendant. (Doc. 2, Composite Ex. A at 17; and Doc. 2, Composite Ex. B at 15).[2]

On October 13, 1994, RAB's Board of Directors held a meeting at which they unanimously approved conversion of the long-term disability insurance from an employer-paid plan to an employee-paid plan. (Danner Aff., Ex. 1, at 2). After this conversion, RAB continued to remit the premiums to the insurer but the physicians actually paid the premiums with their after-tax earnings. (Danner Aff. at ¶ 16). RAB continued to remit the premiums to the insurer because the physicians enjoyed a discount if RAB paid the premiums via one bill. (Id. at ¶ 17).

On May 29, 2003, Plaintiff filed a three-count complaint against Defendant in state court. Plaintiff asserted, in Counts I and II, breach of contract claims against Defendant for nonpayment of disability benefits. Plaintiff also sued Francis J. Tragesser, the insurance agent, in Count III, for professional negligence. Plaintiff also filed, in this Court, a suit against Unum, Stern v. Unum Life Ins. Co., Case No. 6:03–cv–948–ORL–31KRS, for nonpayment of disability benefits under Unum policy number 377402.

On July 10, 2003, Defendant Provident removed the instant case to this Court (Doc. 1), asserting federal question jurisdiction under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001–1461. On August 8, 2003, Plaintiff filed a Motion to Remand (Doc. 18), contending that his claims are not subject to ERISA because the insurance policies were issued individually and not as part of a welfare plan provided by the employer.

On August 22, 2003, Judge John Antoon ordered reassignment of the Unum case, No. 6:03–cv–948, to this Court. (Doc. 22, Case No. 03–948).[3] On September 17 and 19, 2003, the Court dismissed Plaintiff's claims against Tragesser in both Case

1. RAB also has an insurance policy with Unum Life Insurance Company ("Unum"), policy number 377402, which provides disability benefits to all RAB employees. (Danner Aff. at ¶ 8). The Affidavit of Robert J. Danner, former administrator for RAB, was filed as an unnumbered attachment to Document 18. An Affidavit of Greg Thomson, former financial manager of RAB, also was filed as an unnumbered attachment to Document 18. The Thomson affidavit, however, was not signed, and hence the Court did not consider it in its analysis.

2. Page 17 of Document 2, Composite Exhibit A, and page 15 of Document 2, Composite Exhibit B contain a "Premium Payment Rider." These Premium Payment Riders included in the policies specified that "In consideration of the Premium Payment Agreement between the Association and us, we agree to accept Policy Premiums as billed you." (Doc. 2, Composite Ex. A at 17; and Doc. 2, Composite Ex. B at 15). Moreover, the riders noted they would be "void if: a. your membership in the Association ends; or b. the Premium Payment Agreement is terminated." (Doc. 2, Composite Ex. A at 17; and Doc. 2, Composite Ex. B at 15). The riders further provided that if voided, "premiums will be due and payable as required in the policy."

3. The Unum case also was removed from state court by Defendant UNUM but Plaintiff has not filed a motion to remand in that case.

Nos. 03–948 and 03–947, respectively, without prejudice, noting that, if appropriate, the claims could be reasserted in state court (*see, e.g.,* Doc. 30, Case No. 03–947).

The Court now considers Plaintiff's Motion to Remand.

## II. Analysis

■ Section 1441 of Title 28 governs removal of cases from state court, providing in pertinent part that "any civil action brought in a State court of which the district courts of the United States have *original jurisdiction,* may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a) (emphasis added). A removing defendant bears the burden of proving federal jurisdiction. *Leonard v. Enterprise Rent A Car,* 279 F.3d 967, 972 (11th Cir. 2002). Removal is proper when Congress "preempts an area of law so completely that any complaint raising claims in that area is necessarily federal in character." *Whitt v. Sherman Int'l Corp.,* 147 F.3d 1325, 1329 (11th Cir.1998); *see also Nix v. United Health Care of Ala., Inc.,* 179 F.Supp.2d 1363, 1366 (M.D.Ala.2001) (citing *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), and *Butero v. Royal Maccabees Life Ins. Co.,* 174 F.3d 1207, 1211–12 (11th Cir.1999)). "ERISA was intended to completely preempt state law claims involving rights to recover benefits under employee benefit plans." *Id.* (citation omitted). Thus, if the disability insurance policies at issue are covered by ERISA,[4] then removal was proper.

■ Whether an ERISA plan exists is a fact question for the Court to determine. *Letner v. Unum Life Ins. Co. of Am.,* 203 F.Supp.2d 1291, 1297 (N.D.Fla.2001) (citation omitted). The Eleventh Circuit uses a flexible approach when determining whether a plan is subject to ERISA. *Whitt,* 147 F.3d at 1330 (citing *Williams v. Wright,* 927 F.2d 1540, 1543 (11th Cir. 1991)). Although courts must liberally construe ERISA, removal must be "approached with great care." *Letner,* 203 F.Supp.2d at 1296 (citing *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)).

■ A policy constitutes an employee welfare benefit plan under 29 U.S.C. § 1002(1) if it is a:

> (1) a'plan, fund or program' (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits (5) to participants or their beneficiaries.

*Donovan v. Dillingham,* 688 F.2d 1367, 1371 (11th Cir.1982) (en banc). To determine if an ERISA "plan, fund or program" was instituted, a court must look at the surrounding circumstances to determine whether a "reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Id.* at 1373.

Whether a plan is subject to ERISA also may be determined by looking to certain rules promulgated by the Department of

---

4. Notably, the Court must limit its analysis herein only to the two Provident policies. The Unum policy to which all RAB employees are subject is irrelevant in determining whether the Provident policies are subject to ERISA. *Letner v. Unum Life Ins. Co. of Am.,* 203 F.Supp.2d 1291, 1299 (N.D.Fla.2001) (citing *Slamen v. Paul Revere Life Ins. Co.,* 166 F.3d 1102 (11th Cir.1999), for the principle that the fact that a group policy is subject to ERISA has no bearing on whether an individual policy is subject to ERISA).

Labor pursuant to 29 U.S.C. § 1135. Indeed, the Department of Labor issued safe harbor regulations that delineate certain circumstances in which an insurance program will *not* be deemed an ERISA plan. *Randol v. Mid–West Nat'l Life Ins. Co. of Tenn.*, 987 F.2d 1547, 1550 (11th Cir.1993) (noting that a plan that meets the safe harbor regulations definitely does not qualify as an ERISA plan). Under 29 C.F.R. § 2510.3–1(j), an insurance program offered by an insurer to employees is not considered ERISA if:

1) No contributions are made by the employer;

2) Participation in the program is completely voluntary;

3) The sole function of the employer with respect to the program, without endorsing the program, is to permit the insurer to publicize the program to employees, to collect premiums through payroll deductions or dues checkoffs, and to remit them to the insurer; and

4) The employer receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

In order to fall within the safe harbor regulations, the insurance program must satisfy all four statutory criteria. *Edwards v. Prudential Ins. Co. of Am.*, 213 F.Supp.2d 1376, 1382–83 (S.D.Fla. 2002) (citing cases). In conducting its inquiry, the Court must focus on how an objectively reasonable employee would view the totality of the circumstances. *Id.* at 1383 (citations omitted).

In the instant case, the policies as they currently stand might qualify for safe harbor protection. Indeed, after October 1994, when the Board of Directors voted to switch to an employee-paid plan, RAB began to act merely as an administrative conduit between the employees and the insurance company. In such cases where an employer serves as a mere conduit, courts have found the safe harbor regulations to be satisfied. *See, e.g., Taggart Corp. v. Life and Health Benefits Admin., Inc.*, 617 F.2d 1208, 1210–11 (5th Cir. 1980)[5] (finding that the employer acted as a mere conduit by forwarding payments to a group insurer);[6] *Schwartz v. Provident Life and Accident Ins. Co.*, 280 F.Supp.2d 937, 942 (D.Ariz.2003) (collecting cases in which an employer that acts as a mere "conduit for payment of premiums does not make contributions for purposes of the safe harbor regulation"); *Letner*, 203 F.Supp.2d at 1302 (finding that the policy fell within safe harbor regulation because the employer's role was limited to the administrative task of implementing payroll deductions). This Court, however, cannot examine the policies only in their current form; it also must examine them from the point of their creation. At the policies' inception in 1988 until October 1994, RAB paid the premiums pursuant to a plan it established directly with the insurer. As a result, the insurance program at that time did not meet prong one of the safe harbor regulations, and would presumably have fallen under ERISA.[7]

---

**5.** All decisions of the Fifth Circuit prior to October 1, 1981, are binding precedent on this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

**6.** *Randol* distinguished *Taggart* because in *Randol*, the "employer not only established a system for withholding premiums from employee wages and paying them directly to the carrier, but also contributed $75 per employee toward the monthly premium and did so for the purpose of helping the employees obtain health insurance coverage." 987 F.2d at 1552.

**7.** Just because the insurance program falls outside the safe harbor regulations, however, does not necessarily make the program sub-

■ Thus, the question becomes whether the change in payor status converted the policies from ERISA-covered to non-ERISA plans. To resolve this issue, the Court must look to the statutory language of § 1002(1) to determine whether the policies were "established or maintained" by an employer for the benefit of its employees. The Court finds that the policies at issue herein were "established" as ERISA plans. A plan is "established" when " 'there has been some degree of implementation by the employer going beyond a mere intent to confer a benefit.' " *Nix*, 179 F.Supp.2d at 1367 (quoting *Butero*, 174 F.3d at 1214). Here, the employer implemented the plan by providing—for approximately 6 years—the financing source.[8] Because the plans were established as ERISA policies, they remain subject to ERISA. This is so even though the plans were not "maintained" as ERISA policies beyond October 1994.

In *Jaffe v. Provident Life and Accident Insurance Company*, 2000 WL 349750 (S.D.Fla. March 21, 2000), for example, the plaintiff was a doctor employed by a professional association. *Id.* at *1. In 1990, the plaintiff entered into a disability insurance contract with Provident. *Id.* For eight years thereafter, the association paid the premiums on the policy pursuant to a Salary Allotment Agreement. *Id.* In 1998, Plaintiff began to pay the premiums or reimburse the association for premiums paid. *Id.* The court held that the plan was established as an ERISA plan and hence remained an ERISA plan regardless of the

fact that, in 1998, the plaintiff began to pay his own premiums. *Id.* at *4 n. 8. In the instant case, RAB paid the premiums on the policy from 1988 until October 1994 pursuant to a Premium Payment Agreement. In October 1994, Plaintiff began to pay his own premiums but the policies did not change in any other aspect. As in *Jaffe*, this Court thus concludes that because the policies began as ERISA plans, they so remained, notwithstanding the change of payor.

*Jaffe* is not alone in reaching this result. *Nix* found persuasive the logic of *Jaffe* as well as the reasoning of *Peterson v. American Life and Health Insurance Co.*, 48 F.3d 404, 407 (9th Cir.1995), and *Judith Miller, M.A., LMFCT v. Provident Life and Accident Insurance Co.*, 2000 WL 1341480 (C.D.Cal. Sept.5 2000). *Nix*, 179 F.Supp.2d at 1369. *Nix* made much of the disjunctive nature of the statute, i.e., the plan must either be "established *or* maintained" to qualify as ERISA. 179 F.Supp.2d at · 1369–70. Based on the "plain meaning of the statute," the court held that "it is enough ... that, at its inception, the plan was an ERISA plan...." *Id.* at 1370. This Court notes, however, that a tension exists between the disjunctive "established or maintained" language of § 1002(1) and the present tense language used in the Department of Labor's safe harbor provision. Indeed, the safe harbor regulation states that a plan is not an ERISA plan if no contributions *are* made by the employer and participation in the program *is* completely

---

ject to ERISA. The Eleventh Circuit declined to decide whether a plan that falls outside the safe harbor regulations still must meet the requirements of 29 U.S.C. § 1002(1) to qualify as an ERISA plan. *Randol*, 987 F.2d at · 1550 n. 3.

**8.** In addition to the employer providing the initial financing source, a reasonable person could ascertain that: a) the benefits intended

were for disability; b) the intended beneficiaries were RAB employees, including Plaintiff; and c) the insurance policies prescribed the benefit procedures. Moreover, looking at the employee's point of view, Plaintiff obviously knew that RAB was paying his premiums, as he so answered to question 11 on his application for the insurance. (Doc. 2, Composite Ex. A).

voluntary, etc. 29 C.F.R. § 2510.3–1(j). The safe harbor language therefore suggests that a court should look at the policy as it stands in its current form, not necessarily from the time of its creation. This tension notwithstanding, the case law, as it has developed,[9] suggests that once ERISA, always ERISA. Because the policies in this case originally were conceived and implemented as ERISA policies, the Court must find that the policies at issue here are subject to ERISA and the case properly removed.[10]

### III. Conclusion

It is therefore **ORDERED and AD-JUDGED** that Plaintiff's Motion to Remand (Doc. 18) is **DENIED.**

**DONE** and **ORDERED** in Chambers, Orlando, Florida this _____ day of December, 2003.

**9.** The Eleventh Circuit has not definitively ruled on whether *Jaffe* reached the correct result. This Court surmises, however, that the Circuit Court would affirm *Jaffe*. Indeed, in *Glass v. United of Omaha Life Insurance Co.*, 33 F.3d 1341 (11th Cir.1994), the court had occasion to ask whether "a policy that is initially governed by ERISA can undergo a transformation such that it is no longer part of an ERISA plan." *Id.* at 1346. The policy at issue was a conversion policy, i.e., a policy obtained through one's employer but later converted to an individual policy through exercise of conversion rights after termination of employment. *Glass,* like many other courts, found that the conversion policy remained subject to ERISA because the plaintiff's "ability to obtain the converted life insurance policy arose from the ERISA plan, and the converted policy itself continued to be integrally linked with the ERISA plan." *Id.* at 1347.

At least one Circuit has expressly disagreed with *Glass* and its attendant logic, claiming that while the right to convert remains subject to ERISA, the conversion policies themselves do not. *Demars v. CIGNA Corp.,* 173 F.3d 443, 450 (1st Cir.1999). *Demars* held that conversion policies should not remain subject to ERISA because employers no longer bear any administrative or financial responsibility for them.

This Court is, of course, bound to follow the law of the Eleventh Circuit, which suggests that a policy established as an ERISA plan remains an ERISA plan despite changes the plan may undergo such that it no longer is maintained as an ERISA plan.

**10.** Because the Court has determined that the policies are ERISA-covered, the Court has federal subject matter jurisdiction to hear the case. The Court need not inquire, therefore, whether the Court has diversity jurisdiction, as argued by Defendant in its Amended Notice of Removal, or in the Alternative, Supplemental Response to Motion to Remand (Doc. 33).