Mark J. SCHWARTZ, Plaintiff,

v.

PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, Defendant.

No. CV 01–2041 PHX PGR.

United States District Court, D. Arizona.

Feb. 11, 2003.

Richard M. Waugh, Richard M. Waugh Ltd., Phoenix, AZ, for Plaintiff.

Brad Kevin Keogh, Law Office of Brad K. Keogh, Phoenix, AZ, for Defendant.

## ORDER

ROSENBLATT, District Judge.

Pending before the Court is Defendant Provident Life and Accident Insurance Company's Motion for Summary Judgment (doc. # 11) and Plaintiff's Cross–Motion for Partial Summary Judgment Re ERISA (doc. # 16). Having considered the parties' memoranda and the oral argument of counsel, the Court finds that the plaintiff's motion should be granted, and the defendant's motion denied, because ERISA does not preempt the plaintiff's state law claims inasmuch as the plaintiff's disability insurance policy is not part of an ERISA-governed employee welfare plan.

The Court concludes that the following facts are undisputed for the purposes of the parties' cross-motions. The plaintiff first obtained an individual disability insurance policy from the defendant in May 1991. At that time, the plaintiff, a CPA, was the president of Schwartz, Cohen & Co., P.C. ("SCC") and owned a 39% interest in the company; SCC then had three other shareholders and some 35–40 employees. The plaintiff obtained a replacement policy from the defendant in November 1991 and a second replacement policy (the policy at issue) in April 1992.

The plaintiff obtained the insurance policy through independent insurance agent Ian Ackerman, an acquaintance, who approached him in May 1991 with the suggestion that SCC's principals apply for individual disability policies with the defendant under the defendant's "list billing" discount program whereby individual disability policies were offered at a discounted premium if the insured's employer agreed to be billed for and remit premiums directly to the defendant. SCC entered in a Salary Allotment Agreement with the defendant on May 15, 1991 wherein SCC agreed to pay in full the entire required premiums for the individual disability policies. Besides the plaintiff, three other shareholders, George Cohen, Mitchell Adler and Mark Rosenfeld, obtained individual disability policies from the defendant at various times in 1991 under the list billing arrangement, as did "key employees" Steven Kopp, who subsequently became a shareholder, and Michael Folb.

SCC was sold to American Express Tax & Business Services in April 1997 and all of SCC's employees became American Express employees. While SCC has not conducted active business operations since 1997, it continues to collect its receivables and installment payments due under the business sales agreement, and still pays premiums to the defendant under the list billing arrangement.

The plaintiff underwent heart bypass surgery in January 1999 and applied for disability benefits in March 1999. He was released for part-time work during April–

July 1999 and the defendant paid him benefits for those months; he then applied for total disability benefits in June 1999 but the defendant denied his claim for further benefits after July 1999. At the time the plaintiff filed his claim for benefits in 1999, all of the SCC individuals still insured by the defendant, *i.e.,* the plaintiff, Cohen, Adler, and Kopp, were SCC shareholders.[1]

■ While ERISA preemption is a question of law, *Waks v. Empire Blue Cross/Blue Shield,* 263 F.3d 872, 874 (9th Cir.2001), the existence of an ERISA plan is a question of fact to be answered in the light of all surrounding circumstances from the point of view of a reasonable person. *Stuart v. UNUM Life Ins. Co. of America,* 217 F.3d 1145, 1149 (9th Cir.2000). Because the defendant's claim of ERISA preemption is a federal defense, the burden is on the defendant to prove the facts necessary to establish it. *Kanne v. Connecticut General Life Ins. Co.,* 867 F.2d 489, 492 n. 4 (9th Cir.1988), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989); *Zavora v. Paul Revere Life Ins. Co.,* 145 F.3d 1118, 1120 n. 2 (9th Cir.1998) (The burden of establishing the existence of an ERISA plan is on the defendant insurer.) The Court concludes as a matter of law that the defendant has not met its burden.

■ The plaintiff argues in part that his insurance policy is not an employee welfare benefit plan under ERISA's definition because at the time he applied for disability benefits the individual disability policies purchased from the defendant covered only SCC shareholders. The plaintiff's argument is premised on the Department of Labor regulations implementing the statutory definition of an employee benefit plan

that provide that a plan "under which no employees are participants" does not constitute an ERISA employee benefit plan, 29 C.F.R. 2510.3–3(b), and that an owner of a business is not considered an "employee" for purposes of determining the existence of an ERISA plan, 29 C.F.R. § 2510.3–3(c)(1), (2); *LaVenture v. Prudential Ins. Co. of America,* 237 F.3d 1042, 1045 (9th Cir.2001); *see also, Kennedy v. Allied Mutual Ins. Co.,* 952 F.2d 262, 263 (9th Cir.1991) (ERISA does not govern a plan whose only fully vested beneficiaries are a company's owners, but coverage of even one non-owner employee is sufficient to bring a policy within ERISA's scope.)

The Court is unpersuaded by the plaintiff's argument because the Court concurs with the defendant that, pursuant to *Peterson v. American Life & Health Ins. Co.,* 48 F.3d 404 (9th Cir.), *cert. denied,* 516 U.S. 942, 116 S.Ct. 377, 133 L.Ed.2d 301 (1995), which the Court concludes is still the law of this circuit for the principle for which the defendant cites it, the determinative time period relevant to this issue is when the policy was purchased, not when the claim was submitted, and it is undisputed that at the time the plaintiff obtained his disability policy from the defendant a non-shareholder, Folb, also obtained a disability policy from the defendant under the list billing agreement.[2]

■ The plaintiff also argues, however, and the Court concurs, that ERISA is not applicable to this action because his disability insurance policy falls within the Department of Labor's "safe harbor" regulation, 29 C.F.R. § 2510.3–1(j). It is well settled that when an employer provides an

---

**1.** Kopp was made a SCC shareholder in 1993, and Kopp dropped his policy with the defendant in February 1999.

**2.** Although the plaintiff makes much of the fact that Folb was a key employee of SCC whom the shareholders treated as an unofficial shareholder, the Court concludes that Folb was in fact a non-owner employee of SCC for purposes of the DOL regulations.

insurance plan to employees and satisfies all four requirements of the safe harbor regulation, the employer's mere purchase of insurance does not, by itself, create an employee welfare benefit plan under ERISA. *Stuart v. UNUM Life Ins. Co. of America,* 217 F.3d at 1149.

Under the DOL regulation, an employee insurance plan is exempt from ERISA coverage when:

(1) No contributions are made by an employer[;]

(2) Participation in the program is completely voluntary for employees[;]

(3) The sole functions of the employer ... with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees ..., to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer ... receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3–1(j); *Stuart,* 217 F.3d at 1149. Only the first and third factors are at issue here inasmuch as there is no dispute that the disability insurance policies were obtained by the SCC personnel on a purely voluntary basis and that the defendant did not pay SCC any compensation in connection with the policies.

■ The defendant's contention with regard to the first safe harbor factor is that the plaintiff's insurance policy is not exempt from ERISA coverage as a matter of law because SCC made contributions to the plan on behalf of its employees. The Court disagrees. Although it is undisputed that SCC, through its Salary Allotment Agreement with the defendant, was direct-ly billed by the defendant for all of the premiums for the individual disability policies and that SCC issued company checks to pay all of those premiums, the Court concludes that such activity on SCC's part is not, by itself, determinative of this issue. The dispositive question is whether SCC actually absorbed any portion of the cost of those premiums, which by itself would be sufficient to bring the insurance policy outside of the safe harbor, or whether SCC was merely a conduit for premium payments actually made by the insureds, which is conduct which would meet the requirement of the first safe harbor factor.

The plaintiff has submitted significant probative evidence, unrebutted by the defendant, that SCC merely acted as a premium payment conduit in that the plaintiff's affidavit states in relevant part:

13. Notwithstanding the "list-billing" arrangement, each policyholder was ultimately responsible for his own premiums because SCC took them into account when calculating base salary and year-end profit allocations and bonuses....

14. As a matter of administrative convenience, SCC paid the disability premiums and a variety of other personal expenses for its key members during the course of each year.... These items were all considered "non-shared expenses" and were deducted from each individual's total compensation when the final allocations were calculated at year end. Rather than attempt to recover the non-shared expenses via payroll deductions throughout the year, SCC accounted for everything through the year-end accounting process. This type of procedure is common among small firms, especially those involving professionals. In this manner, SCC acted merely as a conduit for me and the other key individuals to pay our premiums.

The defendant argues that for purposes of the safe harbor test it is simply irrelevant that SCC made a year-end decision to include all of the premium contributions it had made on the plaintiff's behalf throughout the year as non-salary compensation, what the defendant refers to without any support at all as "bookkeeping shenanigans", because the first safe harbor criteria is not satisfied as a matter of law if an employer makes "any" contributions on behalf of its employees. The defendant cites *Crull v. GEM Ins. Co.*, 58 F.3d 1386, 1390 (9th Cir.1995), in support of this proposition. In *Crull*, the Ninth Circuit stated that "the DOL's regulations and our precedents recognize an employer's payment of a portion of the insurance premium as a significant factor for determining the existence of an ERISA plan." *Crull*, however, is not controlling inasmuch as the insured employee in that case contributed 75% of the premium payments through payroll deductions and the employer "absorbed the cost" of the other 25%. 58 F.3d at 1388.

The plaintiff, correctly noting that the safe harbor regulation itself provides that an employer does not endorse a plan merely by collecting premiums through payroll deductions or dues checkoffs and remitting them to the insurer, argues that the SCC recoupment policy is the functional equivalent of a payroll deduction. His contention is that

> the clear underlying principle is that ERISA should not apply to insurance which is in fact purchased by employees with their own funds, merely because an employer acts as a collecting and remitting agent for payment of premiums. This fundamental principle should not be overlooked by making technical distinctions between paycheck deductions by large employers and accounting offsets common among shareholders in closely-held firms.

The Court agrees with the plaintiff. The defendant has not cited to any evidence establishing that SCC's contributions to the insurance premiums actually resulted in any out-of-pocket expenses to it, *i.e.*, there is no evidence that SCC in any way subsidized the purchase of the insurance by actually absorbing any of its cost; what the evidence establishes is that SCC charged the plaintiff and the other insureds with 100% of the premium costs. Courts have noted in a variety of situations that an employer which merely acts an a conduit for payment of premiums does not make contributions for purposes of the safe harbor regulation. *See e.g., Levin v. UNUM Life Ins. Co. of America*, 33 F.Supp.2d 1179, 1183 (N.D.Cal.1998) (Court concluded that an insurance policy was not an ERISA policy in part because "[a]lthough the [employer] paid for the premiums on plaintiff's insurance policy, it did so as plaintiff's agent ... with the plaintiff himself remaining personally liable for the premiums."); *B–T Dissolution, Inc. v. Provident Life and Accident Ins. Co.*, 175 F.Supp.2d 978, 983 (S.D.Ohio 2001) (Court found that employer did not make contributions to the policy premiums for purposes of the safe harbor regulation notwithstanding that employer directly paid the premiums to the insurers because the employer charged the full cost of the premiums to the employees as taxable income); *Schneider v. Provident Life and Accident Ins. Co.*, 1999 WL 281206 (N.D.Cal.1999) ("[The employer's] issuance of premium checks to Provident, with the cost charged to Plaintiff as taxable income, falls squarely within the 'safe harbor' provision of 29 C.F.R. § 2510.3–1(j)."); *Morris v. Paul Revere Ins. Group*, 986 F.Supp. 872, 876 (D.N.J.1997) (Court recognized that "ERISA's Safe Harbor Provision may cover situations where an employer pays insurance premiums and deducts their value from an employee's salary.")

The defendant's contention with regard to the third safe harbor factor is that the plaintiff's policy is not exempt from ERISA coverage for the additional reason that SCC endorsed the disability insurance policies issued to the plaintiff and the other SCC personnel. The Court concludes as a matter of law, however, that SCC did not endorse the plaintiff's disability insurance policy or the other individual policies because a reasonable person could only conclude from the evidence of record that SCC "served no function other than that of a conduit" as to those policies, *Zavora v. Paul Revere Life Ins. Co.*, 145 F.3d at 1122, and performed no more than ministerial administrative tasks that did not constitute an abandonment of its neutrality with regard to the operation of those policies.

The defendant argues that an employer will be deemed to have endorsed an ERISA plan as a matter of law if it does anything other than publicize the program to employees and collects premiums through payroll deductions and remits them to the insurer. The basis for this proposition is such Ninth Circuit cases as *Crull v. GEM Ins. Co.*, 58 F.3d at 1389, wherein the Ninth Circuit stated: "We have held ... that even if an employer does no more than arrange for a group-type insurance program, it can establish an ERISA plan, unless it is a mere advertiser who makes no contributions on behalf of its employees." (Internal quotation marks and brackets omitted). The Court is unpersuaded by this argument because the defendant reads too much into these cases. The Ninth Circuit has noted that the safe harbor regulation can be satisfied even if the employer undertakes activities not specifically listed in the regulation's third requirement. For example, in *Stuart v. UNUM Life Ins. Co. of America*, 217 F.3d at 1153, the court, citing to *Zavora v. Paul Revere Life Ins. Co.*, 145 F.3d 1118 (9th Cir.1998), stated that *"Zavora* instructs that an employer can be a plan administrator in name only and can still satisfy the four requirements of the safe harbor regulation, even though being a plan administrator is not listed in the safe harbor's third requirement."

In contrast to the plaintiff's position, which is supported by significant probative evidence, that SCC did nothing more than transmit insurance premiums to the defendant under the list billing arrangement and inform the defendant when one of the insureds left SCC, the defendant argues that SCC undertook numerous administrative tasks. In support of its position, the defendant relies on the affidavit of Terry Thompson, an assistant vice-president in its underwriting department. Thompson's affidavit states in part:

15. In addition to (a) SCC's agreement in the Salary Allotment Agreement to pay in full the entire required premium for all of the insurance policies Provident issued to SCC's employees, SCC thereafter assumed numerous responsibilities for and played an active role in the administration of the Plan, by (b) providing Provident with a binding check to submit with the applications for the Plan; (c) selecting the specific insurance product to be made available to its employees; (d) selecting the specific benefit period to be made available to its employees; (e) selecting the specific elimination period to be made available to its employees; (f) reviewing Provident's billing statements and reporting to Provident all additions and deletions of employees from coverage under the Plan; (g) maintaining a current list of all employees covered under the plan; (h) communicating any billing or eligibility disputes to Provident; (i) receiving and processing all refunds of overpayment or premium from Provident; and (j) deciding when to terminate the Plan.

The Court concludes that some of the above cited-to administrative tasks are at best merely ministerial tasks that do not amount to an endorsement. For example, the mere fact that SCC kept the defendant informed about which of its personnel were covered by the disability policies does not make it an endorser of the policies. *See Zavora*, 145 F.3d at 1122 ("Paul Revere also argues that [the employer] actively interpreted and applied the policy in determining which employees were eligible. . . . [I]f the reference is to the fact that [the employer] verifies full-time employment status to Paul Revere, it is clearly a ministerial function that is ancillary to other activities that create no ERISA plan under the safe harbor regulations.[3] *See Johnson [v. Watts Regulator Co.,* 63 F.3d 1129, 1137 (1st Cir.1995)] (employer's activities in maintaining list of enrollees, tracking eligibility status, and other ancillary activities were properly found within safe harbor).")

As to other of the administrative tasks relied upon by the defendant, which the plaintiff disputes that SCC actually performed, such as whether SCC selected the defendant as the insurer and determined such coverage features as effective dates, elimination periods, policy periods, etc., the Court concludes that the defendant has failed to establish the existence of any genuine issue of material fact rebutting the plaintiff's significant probative evidence. The plaintiff, through his affidavit and that of insurance agent Ackerman, has submitted evidence establishing that the individual insureds dealt individually with the defendant in submitting their own applications and selecting and changing coverage levels and other options. In contrast, the defendant's evidence on this issue, submitted through Thompson's affidavit, is only that "unless it is all one big coincidence, SCC most likely selected" the policy options given that the same options were initially selected. Such speculation on Thompson's part creates merely colorable evidence that is not sufficient to present a genuine issue as to a material fact.

■ Other arguments presented by the defendant are also insufficient to establish an endorsement on SCC's part. Although the defendant argues that SCC "expressly agreed to act as the administrator of the Plan by entering into the Salary Allotment Agreement with Provident[,]" the statement of fact cited for this proposition does not support it since the statement of fact only references the Salary Allotment Agreement and that document makes no reference whatsoever to any "plan" or to any agreement to serve as a plan adminis-

---

3. Endorsement is not established even if SCC can be said to have instigated the arrangement with the defendant since courts have concluded that an employer which merely arranges for discounted premiums with an insurer is not an endorser for purposes of the safe harbor regulation. *See e.g., Johnson v. Watts Regulator Co.,* 63 F.3d 1129, 1133 (1st Cir.1995) (Court noted that "[i]n theory, an employer can assist its work force by arranging for the provision of desirable coverage at attractive rates" and still meet the safe harbor requirements.); *Rubin v. Guardian Life Ins. Co. of America,* 174 F.Supp.2d 1111, 1119 (D.Or.2001) (Court, in concluding as a matter of law that NW Permanente never endorsed the long-term disability policies, stated that the insurer's "willingness to provide NW Permanente's employees with a discount for purchasing disability insurance is insufficient, in and of itself, to establish that NW Permanente went beyond employer neutrality in its involvement with the disability insurance offer."); *Sandborg v. Royal Ins. Holdings,* 1998 WL 61218 (N.D.Cal.1998) (Court concluded that no employer endorsement occurred as a result of a "list billing" process whereby the insured received a 15% discount because his employer allowed the insurer to send it a unified bill for all premiums of partners and employees, deducted the funds from the insureds' paychecks, and sent the insurer a single payment for all of the premiums.)

trator; it simply says that SCC agrees to remit premiums for policies issued to certain individuals. While it is undisputed that the defendant internally documented the plan as the "Schwartz, Cohen & Company, P.C. Risk Group No. 00064188" and the defendant referred to, and treated, the plaintiff's policy as an ERISA plan in denying him benefits, it is also undisputed that neither the plaintiff's disability policy nor any of the other individual insurance policies mentioned SCC by name or contained any provisions regarding ERISA coverage, appeal rights, or plan administration. Furthermore, the defendant does not dispute that SCC did not distribute any plan information, did not instruct anyone as to procedures for submitting claims, did not notify anyone regarding any plan changes, and did not maintain any records or files with respect to the defendant's disability policies other than premium billing records. But even if the defendant is correct that SCC was named as the plan administrator, that is not determinative since the Ninth Circuit has concluded that a plan administrator in name only is not an endorser for purposes of the third requirement of the safe harbor regulation. *Zavora*, 145 F.3d at 1121.

Therefore,

IT IS ORDERED that Defendant's Motion for Summary Judgment (doc. # 11) is denied.

IT IS FURTHER ORDERED that Plaintiff's Motion to Amend Complaint (doc. # 15) is denied as moot.

IT IS FURTHER ORDERED that Plaintiff's Cross-Motion for Partial Summary Judgment Re ERISA (doc. # 16) is granted to the extent that the Court declares that this action is not subject to ERISA.

IT IS FURTHER ORDERED that a status hearing shall be held on Monday, March 10, 2003 at 1:30 p.m. in Courtroom 601.[4]

4. The Court expects counsel to personally confer prior to the status hearing to discuss what remains to be done to ready this action for trial and the timetable for accomplishing those tasks.