Renee SHIPLEY, Plaintiff,

v.

PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, Defendant.

No. CIV.A. 04–0592–BH–C.

United States District Court, S.D. Alabama Southern Division.

Jan. 3, 2004.

Joseph D. Steadman, Sims, Graddick & Dodson, P.C., Mobile, AL, for Plaintiff.

Douglas W. Fink, Henry T. Morrissette, Hand Arendall, L.L.C., Mobile, AL, for Defendants.

## ORDER

HAND, Senior District Judge.

This matter is before the Court on Defendant's Motion and Brief (Doc. 12) in

support of its position that ERISA governs Plaintiff's claims on both the subject group long-term disability policy and the supplemental individual disability policy. Plaintiff has submitted a Response (Doc. 15) to that Motion and Defendant has filed a Reply (Doc. 16) to Plaintiff's Response. The Court has reviewed all three of these documents, as well as any attached exhibits, and finds that Defendant's Motion (Doc. 12) asserting that ERISA preempts Plaintiff's state law claims regarding the supplemental individual disability policy is **due to be GRANTED**.

### Legal Analysis

In the instant case, Plaintiff is seeking to recover benefits she claims are due to her under two separate disability insurance policies, an employer provided long-term disability policy (hereinafter LTD) and an individual supplemental disability policy (hereinafter SLTD). Plaintiff does not dispute that the employer provided LTD Policy is governed by ERISA. *Id.* Plaintiff does, however, contend that the individual SLTD is not governed by ERISA, rather is properly actionable under Alabama state law. (Pl.'s Compl., ¶ 3–6).

### *ERISA "Safe Harbor"*

■■■ In determining whether ERISA applies to a particular plan, the Eleventh Circuit has noted that courts must first examine whether or not the plan falls within the regulatory "safe harbor." *Anderson v. UNUM Provident Corp.*, 369 F.3d 1257, 1263 n. 2 (11th Cir.2004). The Department of Labor has laid out guidelines deeming certain group insurance plans as not falling within the purview of ERISA if

they meet certain criteria. The safe harbor regulations are as follows:

[t]he terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which

(1) No contributions are made by an employer or employee organization;

(2) Participation in the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3–1(j) (1992).

Defendant Provident contends that the SLTD plan purchased by Plaintiff Shipley fails to satisfy factors (1) and (3).[1]

Speaking to the first factor, Plaintiff claims that because AmSouth did not pay any of her premiums towards the SLTD, no contribution has been made by the employer or employee organization. (Pl.'s Resp., Doc. 15, p. 6). However, the Elev-

---

1. Defendant concedes that the SLTD does satisfy factors (2) and (4). (Def.'s Mot., Doc. 12, p. 19).

enth Circuit has already ruled that an employee's supplemental coverage, even when the premiums are paid entirely by the employee, may still be subject to ERISA. *See Glass v. United of Omaha Life Ins. Co.,* 33 F.3d 1341, 1345 (11th Cir.1994). In *Glass,* as in this case, the supplemental coverage was provided at discounted rates only to participants of the company's basic coverage plan. *Id.* The Circuit Court held that this discounting was significant, finding that the supplemental coverage was "part and parcel" of the whole group insurance plan. *Id.* Here, AmSouth provided its basic LTD plan, which is governed by ERISA, at no cost to its employees. Enrollment in this plan then allowed employees to enroll in the SLTD plan at a discounted rate and without having to receive an additional medical examination. Therefore, the SLTD plan is so entwined with the basic LTD plan that the two are not severable and the employer contribution to the LTD serves as a contribution to the SLTD. The employer contributions to the LTD plan combined with the discounts Plaintiff received towards her SLTD plan as a result of her enrollment the employer sponsored LTD plan qualify as "contributions" made by her employer towards the SLTD.

Defendant further asserts that the third safe harbor factor is not met in this case because of AmSouth's level of involvement with the SLTD policy. Provident cites AmSouth's referencing of the SLTD policy as its own, participation in the maintenance of the plan and involvement in the claims process as evidence of behavior that exceeds what is permissible under the safe harbor regulations. As the Eleventh Circuit has stated, "the regulation explicitly obliges the employer who seeks its safe harbor to refrain from *any* functions other than permitting the insurer to publicize

the program and collecting premiums." *Butero v. Royal Maccabees Life Ins. Co.,* 174 F.3d 1207, 1214 (11th Cir.1999).

It seems clear that AmSouth did more than merely collect premiums and allow Provident to promote its plan. AmSouth selected Provident as the sole insurer of both its LTD and SLTD plans. (Doc. 12, Ex. 1, Aff. of Ken Yarbrough). AmSouth employees were not given the option of selecting coverage for a different insurer under either plan. (*Id.*) AmSouth was also involved in the selection of the terms of the policies made available to its employees. (*Id.*) AmSouth had interaction with Provident concerning policy premiums, coverages, changes and other aspects central to the maintenance of the SLTD plan by AmSouth. (*Id.*) Furthermore, AmSouth seemed to hold out the SLTD Plan as its own in memoranda to its employees. (Doc. 12, Ex. A). The Court finds that these actions by AmSouth go beyond what is required to keep a plan within the safe harbor.

■ Although failure to meet even one of the factors will keep a plan out of the statutory safe harbor, the Court has found that the SLTD policy in question does not satisfy either the first or third elements. Therefore, the Court finds that Plaintiff's SLTD policy does not fall within the safe harbor. However, "a plan that falls outside of the safe harbor exception does not necessarily fall within the jurisdiction of ERISA." *Anderson,* 369 F.3d at 1263 n. 2 (citing *Butero,* 174 F.3d at 1214).

### ERISA "High Seas"

■ The Eleventh Circuit has held that in order for ERISA to govern a plan there must be a "(1) plan, fund, or program (2) established or maintained (3) by an em-

ployer or by an employee organization, or by both, (4) for the purpose of providing ... benefits ... (5) to participants or their beneficiaries." *Anderson,* 369 F.3d at 1263 (citing *Donovan v. Dillingham,* 688 F.2d 1367, 1371 (11th Cir.1982)).

■■■ Plaintiff first contends that the "four corners" of the SLTD policy indicate that it is not covered by ERISA because the language of the policy never mentions ERISA. However, the test is not "whether [an employer] intended the plan to be governed by ERISA, but rather on whether [an employer] intended to establish or maintain a plan to provide benefits to its employees as part of the employment relationship." *Id.* at 1263–64. An employer "may invoke ERISA jurisdiction by either 'establishing' *or* 'maintaining' an employee welfare benefits plan." *Id.* at 1264. Based on the following facts, the Court finds that the employer did, in fact, maintain and establish such a plan.

### AmSouth's Establishment of the SLTD Plan

■■■ "A plan is 'established' when there has been some degree of implementation by the employer going beyond mere intent to confer a benefit." *Anderson,* 369 F.3d at 1264 (quoting *Butero,* 174 F.3d at 1214). In making this determination, the Court should examine all the surrounding relevant facts and circumstances; no single act necessarily indicates establishment. *See Id.* However, the Court in *Anderson* noted that the Eleventh Circuit has, nevertheless, suggested several factors that may be relevant in considering whether an em-

ployer has established a benefits plan that falls under ERISA. *Id.* at 1265 (citing *Butero,* 174 F.3d at 1215). These seven factors include: "(1) the employer's representations in internally distributed documents; (2) the employer's oral representations; (3) the employer's establishment of a fund to pay benefits; (4) actual payment of benefits; (5) the employer's deliberate failure to correct known perceptions of a plans existence; (6) the reasonable understanding of employees; and (7) the employer's intent." *Id.*[2]

Examining each of these factors with equal importance, as well as all other relevant surrounding circumstances, the Court finds that AmSouth clearly established a plan that falls under the purview of ERISA. AmSouth selected Provident as the sole provider of the LTD and SLTD plan for its employees, defined certain terms of the policy, determined certain employees as eligible to receive a percentage of their coverage premiums compensated and identified itself, in internally distributed documents to employees, with the SLTD plan. Based on the above factors, the Court finds that AmSouth established an employee benefits plan that is properly governed by ERISA.

### AmSouth's Maintenance of the SLTD Plan

■■■ Even if the Court found that AmSouth did not *establish* the plan, ERISA would still apply if AmSouth took actions to *maintain* the plan. *See Anderson,* 369 F.3d at 1265. In examining the maintenance issue, the Eleventh Circuit essentially examines the same factors relevant

---

2. The language of the Eleventh Circuit indicates that the seven factors laid out in *Anderson* and *Butero* are not, nor were they meant to be, an exhaustive or exclusive list of what should be examined. Rather, the Court stated that these factors *may* be relevant and that all surrounding facts and circumstances should also be considered. *See Anderson,* 369 F.3d at 1264–1265; *See also Butero,* 174 F.3d at 1214–1215.

when determining establishment. *Id.* However, the Court in *Anderson* also found it significant that the employer maintained a supply of claim forms in its offices and was involved in the claim filing process. *Id.* Such action by AmSouth is evident in the instant case. (Doc. 12, Ex. 1, Aff. of Ken Yarbrough). The Court finds that AmSouth took action to maintain the SLTD, therefore the plan is governed by ERISA for this reason also.

### *Standard of Review for Group LTD Policy*

Defendant, in its Brief (Doc. 12) in support of ERISA preemption, also argues that the plan administrator's decisions regarding the LTD should be reviewed by this court under an arbitrary and capricious standard of review. Plaintiff does not dispute this position and further agrees that this examination is conducted by a review of the administrative record so that general discovery is unnecessary. This position is accepted by the Court.

### CONCLUSION

The Court finds that Plaintiff's SLTD does not fall into the definition of a "safe harbor" from ERISA, rather, it meets the definition of an employee welfare benefit plan and is properly governed by ERISA. Therefore, Plaintiff's state law claims regarding her supplemental disability policy are preempted by ERISA. Further, the Court will properly review the plan administrator's decisions regarding the LTD under an arbitrary and capricious standard of only the administrative record. Defendant's Motion (Doc. 12) is hereby **GRANTED.**