Phillip W. COWART and Annemie Cowart, Plaintiffs

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant**

No. 5:04 CV 312 CAR.

United States District Court, M.D. Georgia, Macon Division.

Aug. 8, 2006.

---

Thomas R. Burnside, III and Mark B. Williamson of Burnside Wall LLP in Augusta, GA, for The plaintiffs.

H. Sanders Carter, Jr. and Lisa R. Richardson of Carter & Ansley LLP of Atlanta, GA, for The defendant.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ROYAL, District Judge.

Before the Court is Defendant Metropolitan Life Insurance Company's Motion for Summary Judgment [Doc. 35]. Plaintiffs have filed a Response [Doc. 40] and Defendant has filed a Reply [Doc. 47]. For the reasons discussed below, Defendant's Motion for Summary Judgment is **GRANTED**. Furthermore, as discussed below, Plaintiffs' request to amend their complaint is also **GRANTED**. Plaintiffs shall have fifteen (15) days from the date of this Order to amend their Complaint.

## BACKGROUND

This case involves a coverage dispute between Plaintiffs and their disability insurance provider, Metropolitan Life Insurance Company ("Defendant" or "MetLife"). Plaintiff Phillip Cowart is the named insured under the policy, and Plaintiff Annemie Cowart, Phillip's wife, is the owner of the policy. Plaintiffs' complaint alleges claims for breach of contract and bad faith arising under Georgia law. Through the present motion for summary judgment, Defendant argues that these claims are preempted by the Employee Retirement Income Security Act ("ERISA"). At the center of this dispute is whether Plaintiffs' disability insurance policy is part of an "employee welfare benefit plan" as defined in Title I of ERISA, 29 U.S.C. § 1002(1) (1999).

Plaintiff Phillip Cowart ("Cowart") is the former President and sole shareholder of Phil Cowart Construction, Inc. ("PCC"). PCC operated as a subchapter-S corporation, meaning that the income or loss of the company passed through to Cowart. During its operation—from ap-

proximately 1976 until 1996—PCC performed residential home construction. In addition to Cowart, PCC employed two superintendents—Henry Jones and John Garrett, together with a bookkeeper and various laborers. (Cowart Depo. [Doc. 39] p. 40–41, 43–44).

In April 1986, Cowart, Jones, and Garrett purchased disability insurance policies from Defendant.[1] On April 10, 1986, PCC submitted applications for the policies through the DeBorde–Howard Agency. (Verroi Aff. [Doc. 35, Exh. 1] ¶¶ 4(a), 4(f)). At least two of the applications identify PCC as the applicant and intended owner of the policies. (Jones Application [Doc. 35, Exh. 2]; Cowart Application [Doc. 35, Exh. 7]).[2] On both applications, Cowart signed the name "Phil Cowart Construction, Phil Cowart, Pres." on the signature line for the "applicant, if other than the proposed insured." *Id.* In addition, Cowart's application indicates that the premiums were to "be paid with the employer's funds with no part of the premiums paid with funds taxable to Proposed Insured as income." (Cowart Application [Doc. 35, Exh. 7]). In addition, prepayment receipts signed by Cowart (in his capacity as President of PCC) and an agent of Defendant indicate that PCC paid the initial premiums for both policies. (Jones Application [Doc. 35, Exh. 4]; Cowart Application [Doc. 35, Exh. 9]).

The premiums for the three policies were billed to PCC. Because PCC received one bill for the three policies, the premiums were subject to a 10% "list bill" dis-count. (Verroi Aff. [Doc. 35, Exh. 1] ¶ 5; Jones Application [Doc. 35, Exh. 2]; Cowart Application [Doc. 35, Exh. 7]). While Plaintiffs admit that PCC paid the premiums for the three policies, they allege that Cowart, Jones, and Garrett ultimately were responsible for the premium payments because PCC took the payments into account when calculating their salaries. Plaintiffs have produced no documentary evidence of any such agreement, however. Plaintiffs further argue that Cowart was ultimately responsible for his own premium payment because, as the sole shareholder of PCC, his year-end profit allocation directly accounted for the premium payment. Cowart, however, did not report the premium payments as income on his W–2 forms, and therefore was not required to pay taxes on them. (Cowart W–2 [Doc. 35, Exhs. 14, 15]).

The three policies remained in effect even after Cowart, Jones, and Garrett left PCC's employ. Garrett left PCC in 1988 and kept his policy in place when he left the company. Jones left PCC in 1994 and also kept his policy in place. Upon Jones's departure from PCC, Cowart executed a Beneficiary Owner Designation on behalf of PCC transferring ownership of the policy from PCC to Milton Jones Homes, Inc., Jones's new employer. (Beneficiary Owner Designation [Doc. 47, Exh. 3]). Similarly, after PCC ceased operations in 1996, PCC assigned ownership of Cowart's policy to Annemie Cowart. Cowart executed the assignment on behalf of PCC. (Cowart Depo. [Doc. 39] Exh. D–6).

1. The policies were issued by New England Mutual Life Insurance Company, not Defendant, MetLife. In 1996, however, New England Mutual merged with MetLife and ceased to exist, making MetLife a successor in interest. To avoid confusion, the Court will use the name "Defendant" when referring to New England Mutual as well as to Met Life.

2. The record contains only the Jones and Cowart applications. Defendant claims that due to the passage of time, it no longer has a copy of the Garrett application.

On March 14, 1997, Cowart submitted a claim for disability benefits based on a diagnosis of depression and generalized anxiety disorder. For nearly five years, Defendant paid disability benefits to Cowart; however, on January 14, 2002, Defendant notified Cowart by letter that his benefits were being terminated. Cowart then appealed the termination decision, and Defendant denied his appeal in a letter dated October 8, 2003.

Plaintiffs then filed the present lawsuit in the State Court of Houston County, alleging breach of contract and bad faith. Defendant removed the case to this Court on the grounds of diversity jurisdiction, or alternatively, federal question jurisdiction based on its assertion that Plaintiffs' claims were governed by ERISA. Following removal, Plaintiffs did not amend their complaint to assert a cause of action under ERISA. At the close of discovery, Defendant filed the present motion for summary judgment. Through its motion, Defendant argues that Plaintiffs' state-law claims should be dismissed because they are preempted by ERISA. In their Response, Plaintiffs argue that even if their state-law claims are preempted by ERISA, they should be granted leave to amend their complaint to state a claim under ERISA. This Order will address these two motions.

## DISCUSSION

### I. Defendant's Motion for Summary Judgment

#### A. Summary Judgment Standard

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any materi-al fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Johnson v. Clifton,* 74 F.3d 1087, 1090 (11th Cir.1996). Not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict. *See id.* at 249–52, 106 S.Ct. 2505.

In reviewing a motion for summary judgment, the court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the court may not make credibility determinations or weigh the evidence. *See id.* at 254–55, 106 S.Ct. 2505; *see also Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (internal quotation marks omitted).

If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that

there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(e); *see also Celotex*, 477 U.S. at 324–26, 106 S.Ct. 2548. This evidence must consist of more than mere conclusory allegations or legal conclusions. *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir.1991).

## B. ERISA Preemption

 Defendant argues it is entitled to summary judgment because Plaintiffs' claims, which arise under state law, are preempted by ERISA. The ERISA preemption provision states that ERISA supersedes "any and all state laws insofar as they … relate to an employee [welfare] benefit plan." 29 U.S.C. § 1144(a) (1999). Therefore, under this provision, to determine whether a plaintiff's state law claims are preempted by ERISA, the Court must engage in a two-step analysis. In the first step, the Court must determine whether the policy at issue is part of an employee welfare benefit plan governed by ERISA. In the second step, the Court must determine whether the plaintiff's state law claims relate to the plan so as to be preempted by ERISA. In this case, there is no question that Plaintiffs' state-law claims "relate to" their policy. *See Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1215 (11th Cir.1999) (noting that it is well-settled that state-law bad faith and breach of contract claims are the types of claims preempted under ERISA) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987)). Accordingly, the issue of whether ERISA preempts the Plaintiffs' claims turns on whether Plaintiffs' disability insurance policy is part of an ERISA plan.

 The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding circumstances and facts from the point of view of a reasonable person. *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 434 (6th Cir.1996); *see also Stern v. Provident Life & Accident Ins. Co.*, 295 F.Supp.2d 1321, 1324 (M.D.Fla.2003); *Stefansson v. Equitable Life Assurance Soc'y*, No. 5:04–cv–40, 2005 WL 2277486 (M.D.Ga. Sept.19, 2005) (Fitzpatrick, J.). In determining whether ERISA applies to a particular plan, courts usually begin by examining whether the plan falls within the regulatory "safe harbor." *Anderson v. UNUM Provident Corp.*, 369 F.3d 1257, 1263 n. 2 (11th Cir.2004). If a court finds that a plan falls outside of the safe harbor, it must then examine whether the plan satisfies the statutory definition of an "employee welfare benefit plan" found in 29 U.S.C. § 1002(1) (1999).

### 1. Safe Harbor

 The safe harbor exempts from the definition of "employee welfare benefit plan" certain "group or group-type insurance program[s] offered by an insurer to employees." 29 C.F.R. § 2510.3–1(j) (2006). To qualify for the exemption, the following four requirements must be satisfied:

"(1) No contributions are made by an employer or employee organization;

(2) Participation [in] the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs."

*Id.*

All four regulatory requirements must be satisfied in order an insurance plan to qualify for the safe harbor exemption. *Stern,* 295 F.Supp.2d at 1325. The failure to meet even one of the elements will keep a plan out of the safe harbor. *Shipley v. Provident Life & Accident Ins. Co.,* 352 F.Supp.2d 1213, 1216 (S.D.Ala.2004). Defendant concedes that elements (2) and (4) are satisfied—Defendant agrees that the policies were obtained by Cowart, Jones, and Garrett on a purely voluntary basis and that PCC did not receive any consideration in connection with the program. Elements (1) (employer contribution) and (3) (employer endorsement), however, are in dispute.

### a. Employer Contribution

█ The first element of the safe harbor requires that "no contributions are made by the employer." In analyzing this element, courts must consider the behavior of the parties at the time of the payment, not later, self-serving allegations. *Stone v. Disability Mgmt. Servs., Inc.,* 288 F.Supp.2d 684, 691 (M.D.Pa.2003); *Brown v. Paul Revere Life Ins. Co.,* No. 01–1931, 2002 WL 1019021, at *7 (E.D.Pa. May 20, 2002) (citing *Morris v. Paul Revere,* 986 F.Supp. 872, 880–81 (D.N.J.1997)).

Plaintiffs and Defendant disagree as to whether PCC made a "contribution" within the meaning of the ERISA safe harbor.

Defendant argues that PCC made a "contribution" in two ways. First, Defendant argues that PCC made a contribution by subsidizing the insurance premiums of Cowart's policy. Second, Defendant argues that, even if PCC did not subsidize the premiums, it made a "contribution" by enabling Cowart, Jones, and Garrett to receive a 10% list bill discount on the cost of their premiums.

█ Turning to Defendant's first argument, the Eleventh Circuit has recognized that if the employer subsidizes even a portion of the insurance premiums, the safe harbor status is defeated. *See Randol v. Mid–West Nat'l Life Ins. Co.,* 987 F.2d 1547, 1550 (11th Cir.1993) (noting that an insurance plan did not fall within the safe harbor because the employer contributed seventy-five dollars toward the cost of each employee's monthly premium); *accord Letner v. Unum Life Ins. Co.,* 203 F.Supp.2d 1291, 1300 (N.D.Fla.2001). In this case, the parties agree that PCC was billed, and paid the premiums, for Cowart's, Jones's and Garrett's disability policies. This practice, however, does not automatically remove the policies from the shelter of the safe harbor. *See Schwartz v. Provident Life & Accident Ins. Co.,* 280 F.Supp.2d 937, 941 (D.Ariz.2003) (stating that the fact that an employer is billed for a policy and issues company checks to pay the premiums does not, itself, remove a policy from the ERISA safe harbor). Instead, "[t]he dispositive question is whether [the employer] actually absorb[s] any portion of the cost of those premiums." *Id.* And on this issue, the parties disagree.

Plaintiffs claim that despite paying the policy premiums for Cowart, Jones, and Garrett, PCC did not absorb any portion of the cost of those premiums because it took the amount of the premiums into

account when calculating each employee's base salary. Plaintiffs claim that this practice is the functional equivalent of a payroll deduction, which does not amount to an employer contribution under ERISA. *See, e.g., Brown,* 2002 WL 1019021, at *7 & n. 6. Though Courts have noted that this type of procedure is common among small firms like PCC, Cowart has produced no documentary evidence of this arrangement. *See Schwartz v. Provident Life & Accident Ins. Co.,* 280 F.Supp.2d 937, 941(D.Ariz.2003).

The only evidence Plaintiffs produce to support their contention that such an arrangement existed is Cowart's sworn affidavit, given after the present motion for summary judgment was filed. The allegations appearing in Cowart's affidavit directly contradict both his and PCC's behavior at the time the premiums were paid. Specifically, the documents signed by Cowart on behalf of PCC indicate that PCC, not Cowart, paid the premiums. (Cowart Application [Doc. 35, Exhs. 7, 9] ). In addition, Cowart's W-2 forms indicates that Cowart did not report the premium payments as income. Cowart's failure to report the premium payments as income on his W-2 forms, and his resulting avoidance of income tax on the premiums, precludes him from now claiming the premiums as income for ERISA purposes. *See Brown,* 2002 WL 1019021, at *7 (recogniz-ing that by failing to report a premium as "taxable income," an employee represents that the premium amount was paid by his employer; concluding that such an employee is estopped from later claiming that his employer paid the premiums; and noting that "[i]ndividuals must live with the consequences of their tax filings"); *B–T Dissolution, Inc. v. Provident Life & Accident Ins. Co.,* 175 F.Supp.2d 978, 983 (S.D.Ohio 2001) (concluding that employer did not "contribute" to an employee's premium payments when the full amount of those payments was reported on the employee's W-2 as gross income).

■ Because the documents created at the time of payment overwhelmingly indicate that PCC absorbed the cost of the premiums, the first prong of the safe harbor fails. Accordingly, it is unnecessary to consider Defendant's additional argument that the 10% "list bill" discount to which Cowart's Jones's and Garrett's policy premiums were subject amounts to an "employer contribution" for the purposes of the first prong of the safe harbor.[3] Likewise, the Court need not resolve whether the third prong of the safe harbor is satisfied.

## 2. Whether Plaintiff's Policy is Part of an "Employee Welfare Benefit Plan"

■ Having determined that Plaintiff's plan is not sheltered by the safe

---

**3.** On this issue, courts appear to be divided. Some courts have held that the term "contribution" appearing in the safe harbor includes any benefit an employee cannot receive as an individual. *Stone v. Disability Management Servs., Inc.,* 288 F.Supp.2d 684, 692 (M.D.Pa. 2003); *Brown,* 2002 WL 1019021, at *7. Relying on the broad definition of "contribute to" found in Webster's Dictionary, these courts have concluded that an employee's receipt of a 10% or 15% discount on his premium may amount to an employer contribution for the purposes of the ERISA safe harbor if the employee could not have received the same discount as a non-employee. *Stone,* 288 F.Supp.2d at 692; *Brown,* 2002 WL 1019021, at *7. Other courts, by contrast, have suggested that the term "contribution" refers only to a financial contribution. *Letner v. Unum Life Ins. Co.,* 203 F.Supp.2d 1291, 1301 (N.D.Fla. 2001) (citing cases). Those courts have concluded that an employee's receipt of a discount did not amount to an employer contribution. *Id.*

harbor, the Court must now examine whether the plan is governed by ERISA. "A plan that falls outside of the safe harbor does not necessarily fall within the jurisdiction of ERISA." *Anderson v. UNUM Provident Corp.*, 369 F.3d 1257, 1263 n. 2 (11th Cir.2004) (citing *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1214 (11th Cir.1999)). A plan will fall within ERISA's jurisdiction if it satisfies the definition of an "employee welfare benefit plan" found in the statute. *Id.* The statute defines an "employee welfare benefit plan" in broad terms. *Id.* at 1263. It is any: (1) a plan, fund, or program; (2) established or maintained; (3) by an employer; (4) for the purpose of providing benefits; (5) to their participants or their beneficiaries. *Id.; Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir.1982) (en banc).[4] The parties agree that elements (4) and (5) are satisfied. Thus, the only issues remaining are whether Plaintiffs' policy was part of a "plan, fund, or program" (element (1)) and whether such a plan was "established or maintained" by PCC (elements (2) and (3)).

### a. Plan, Fund, or Program

■ A plan, fund, or program exists under ERISA whenever there are "intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits." *Butero*, 174 F.3d at 1214 (citing *Donovan*, 688 F.2d at 1372).

■ The Court has little difficulty concluding that Plaintiffs' disability plan fits within this definition of a plan, fund, or program. Upon examination of the relevant circumstances, it is clear that the intended benefits are the disability payments provided under the insurance policy, the intended beneficiary is Cowart, and the source of financing was either PCC, or Cowart, through the alleged salary reduction arrangement. Finally, the procedures for receiving benefits are those set out in the insurance policy. Though the plan was offered to only three employees—Cowart, Jones, and Garrett—the requirement that there exist an identifiable class of beneficiaries is satisfied even if the benefit in question is conferred on only a single person. *Randol v. Mid–West Nat'l Life Ins. Co.*, 987 F.2d 1547, 1550 n. 4 (11th Cir. 1993).

■ Plaintiffs urge the Court to find no plan exists because the record lacks detailed information about the contours of the plan.[5] Contrary to Plaintiffs' assertion, however, this lack of detailed information does not preclude the plan from being classified as a "plan" within the meaning of ERISA. Rather, in determining the existence of a plan, fund, or program, courts consider the information from the point of view of a reasonable person. *See Donovan*, 688 F.2d at 1373. Moreover, courts have recognized that "[i]nformation about a plan's essential components

---

4. More specifically, the statute defines an "employee welfare benefit plan" as "any plan, fund, or program which was ... established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or beneficiaries, through the purchase or insurance or otherwise, ... benefits in the event of ... disability." 29 U.S.C. § 1002(1) (1999).

5. For instance, Plaintiffs argue that the record contains no evidence to answer the following questions: (1) "Was Mr. Cowart's company required to pay the premiums on behalf of its employees?" (2) "What did the 'plan' provide regarding the level of benefits that Mr. Cowart's company was required to provide its employees?" and (3) "Could the company cease providing benefits at any time?"

may derive from various sources because 'no single act in itself necessarily constitutes the establishment of the plan, fund, or program.'" *Stefansson v. Equitable Life Assurance Soc'y,* No. 5:04cv40, 2005 WL 2277486 (M.D.Ga. Sept.19, 2005) (Fitzpatrick, J.). As discussed above, a reasonable person could determine the intended benefits, intended beneficiaries, a source of financing, and procedures for receiving benefits without the need for the detailed information about the contours of the plan that Plaintiffs argue is absent from the record.

#### b. Established or Maintained

██ Having concluded that Plaintiffs' plan qualifies as a plan, fund, or program as contemplated by ERISA, the Court must now determine whether it was established or maintained by Cowart's employer, PCC. The disjunctive nature of the "established or maintained" language appearing in the statute suggests that a showing of either one is sufficient to give rise to ERISA's application. *See Anderson,* 369 F.3d at 1264; *see also Stern v. Provident Life & Accident Ins. Co.,* 295 F.Supp.2d 1321, 1326 (M.D.Fla.2003) (concluding that once a policy is established as part of ERISA plan, it remains subject to ERISA). Because the two definitions overlap, however, an employer's actions may frequently fall into both categories. *Id.*

██ "A plan is 'established' when there has been some degree of implementation by the employer going beyond mere intent to confer a benefit." *Anderson,* 369 F.3d at 1264 (11th Cir.2004); *Donovan,* 688 F.2d at 1373 ("A decision to extend benefits is not the establishment of a plan or program. Acts or events that record, exemplify or implement the decision will be direct or circumstantial evidence that

the decision has become a reality ... but it is the reality of a plan, fund or program and not the decision to extend certain benefits that is determinative."); *Shipley v. Provident Life & Accident Ins. Co.,* 352 F.Supp.2d 1213, 1217 (S.D.Ala.2004). In making this determination, a court should examine all the surrounding relevant facts and circumstances; no single act necessarily indicates establishment. *Donovan,* 688 F.2d at 1373; *Shipley,* 352 F.Supp.2d at 1217.

The Eleventh Circuit has suggested several factors that may be relevant in the inquiry. They include: (1) the employer's representations in internally distributed documents; (2) the employer's oral representations; (3) the employer's establishment of a fund to pay benefits; (4) actual payment of benefits; (5) the employer's deliberate failure to correct known perceptions of a plan's existence; (6) the reasonable understanding of employees; and (7) the employer's intent. *Anderson,* 369 F.3d at 1265. This list is neither exhaustive nor exclusive, and these factors should be examined along with all the surrounding facts and circumstances. *Shipley,* 352 F.Supp.2d at 1217 n. 2.

██ Examining the above factors with equal importance, as well as all other relevant surrounding circumstances, the Court finds that PCC established a plan that falls within the ambit of ERISA. First, the policies were purchased together. *See Donovan,* 688 F.2d at 1373 (noting that while the purchase of insurance by itself does not conclusively establish a plan, fund, or program, the purchase of multiple policies offers substantial evidence that a plan, fund, or program has been established). In addition, the policy applications clearly indicate that PCC owned the policies; Cowart signed the applications as

"PCC;" PCC used the services of its accountant to help acquire the policies; and Cowart, acting on behalf of PCC, executed a "Beneficiary and Owner Designation" transferring ownership of the policies. Furthermore, PCC determined which employees were eligible to participate.[6] Taken together, these acts provide substantial evidence from which a reasonable person would conclude that PCC established a plan to provide disability benefits to its key employees.

■ Plaintiffs argue that PCC did not establish an ERISA plan because Cowart, as President of PCC, did not intend to create an ERISA plan when he purchased the disability policy, and because the policy documents nowhere mention ERISA. However, the fact that PCC did not intend to create an ERISA plan is not dispositive: "the test is not whether an employer intended the plan to be governed by ERISA, but rather ... whether an employer intended to establish or maintain a plan to provide benefits to its employees as part of the employment relationship." *Shipley*, 352 F.Supp.2d at 1217 (internal citations and alterations omitted); *see also Anderson*, 369 F.3d at 1263–64 ("[O]ur determination of whether ERISA governs [a plan] does not turn on whether [the employer] intended the plan to be governed by ERISA, but rather on whether [it] intended to establish or maintain a plan to provide benefits to its employees as part of the employment relationship."). Likewise, the fact that the language of the policy

does not mention ERISA is of little significance. *See Shipley*, 352 F.Supp.2d at 1217 (discounting plaintiff's argument that her policy was not governed by ERISA because the language of the policy did not mention ERISA); *see also Donovan*, 688 F.2d at 1372 ("ERISA ... does not require a formal written plan.").

As discussed above, an examination of all the relevant facts and circumstances leads to the conclusion that PCC established a plan to provide disability benefits to certain key employees. Because the Court finds that Plaintiffs' policy was part of an employee welfare benefit plan governed by ERISA, Plaintiffs' state-law claims are preempted. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED**.

## II. Plaintiffs' Motion to Amend

■ At the close of their Response brief, Plaintiffs argue that if the Court determines that their state-law claims are preempted by ERISA, "the appropriate remedy is to either construe the complaint to state a claim for recovery of benefits under ERISA or permit [them] to amend the complaint." The Court will construe Plaintiffs' argument as a Motion to Amend.

■ Federal Rule of Civil Procedure 15 governs the amendment of pleadings. In particular, Rule 15(a) provides that after an answer has been filed, a plaintiff may amend his complaint only by leave of the court or by written consent of

---

6. Though Cowart now asserts by affidavit that PCC did not make any decisions concerning the availability of coverage to Jones and Garrett, he testified differently on deposition. Specifically, he stated that PCC offered coverage to Jones and Garrett because:

 They were valuable employees to me, and I felt that, if they were hurt on the job site,

that they should have coverage, and I felt like that, if the company was profitable enough to pay for it, then, I would give it to them, and they were making enough money to pay for it.

(Cowart Depo. [Doc. 39] p. 142).

the adverse party. Fed.R.Civ.P. 15(a). The rule further instructs that a court should liberally grant leave to amend when it is in the interest of justice to do so. *Id.* "[U]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Burger King Corp. v. C.R. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir.1981)). In other words, "[t]he refusal of a federal district court to grant plaintiff leave to amend without any justifying reason . . . is not an exercise of discretion by the court, but is an abuse of discretion and [is] inconsistent with the spirit of the . . . Rules." *Gropp v. United Airlines, Inc.*, 847 F.Supp. 941, 943 (M.D.Fla.1994).

■■■■ Yet, "[w]hile leave to amend should be freely granted when justice so requires. . . the liberal amendment policy prescribed by Rule 15(a) does not mean that leave will be granted in all cases." *Almaz v. Temple–Inland Forest Products Corp.*, 243 F.3d 57, 71 (1st Cir.2001). For instance, motions for leave to amend may be properly denied where there is a finding of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment." *McKinley v. Kaplan*, 177 F.3d 1253, 1258 (11th Cir.1999) (quoting *Foman*, 371 U.S. at 182, 83 S.Ct. 227); *see also Burger King*, 169 F.3d at 1319.

In this case, Plaintiffs were apprised of ERISA's applicability in Defendant's Notice of Removal, filed in September 2004. Plaintiffs were again made aware of Defendant's intent to assert ERISA preemption as an affirmative defense to their state-law claims when Defendant filed its Answer, in October 2004. Yet, at no time did Plaintiffs move to amend their complaint to assert a cause of action under ERISA.

■■■■ Plaintiffs' delay in seeking to assert ERISA claims does not necessarily present a substantial reason to deny their request to amend, however. *See* Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1488 ("In most cases, delay alone is not a sufficient reason for denying leave to amend."). Instead, the most important factor to consider in deciding whether to grant or deny leave to amend is prejudice to the opposing party. *Id.* § 1487. In this case, allowing Plaintiffs to amend their complaint would result in little prejudice to Defendant. The parties have thus far litigated this case with an eye toward ERISA's possible application. Moreover, though the time for conducting discovery has now expired, the discovery conducted in this case was more extensive than is normally allowed in ERISA cases. Accordingly, Plaintiffs' request to amend their complaint to add ERISA claims is **GRANTED**. Plaintiffs shall have fifteen (15) days from the date of this Order to amend their complaint.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. 35] is **GRANTED**, and Plaintiffs' request to amend their complaint to assert ERISA claims is **GRANTED**. Plaintiffs shall have fifteen (15) days from the date of this Order to amend the complaint.

**SO ORDERED.**